**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

FILED: 4/7/15
U.S. DISTRICT COURT
EASTERN DISTRICT COURT
DAVID J. MALAND, CLERK

| | | |
|---|---|---|
| **SEALED,** | § | |
| **Plaintiffs,** | § | **Civil Action No.** |
| | § | **4:14-CV-203** |
| | § | |
| | § | |
| | § | **FILED *IN CAMERA*** |
| | § | **AND UNDER SEAL** |
| **v.** | § | |
| | § | |
| | § | **Pursuant to** |
| | § | **31 USC §3730(b)(2)** |
| **SEALED,** | § | |
| **Defendants.** | § | **Jury Trial Demanded** |

**ATTENTION SEAL CLERK**

**FILED IN CAMERA AND UNDER SEAL**

**FIRST AMENDED FALSE CLAIMS ACT COMPLAINT**

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA, and** | § | |
| **STATES OF CALIFORNIA, FLORIDA,** | § | **Civil Action No.** |
| **OKLAHOMA, and INDIANA,** *ex rel.* | § | **4:14-CV-203** |
| | § | |
| **STEPHEN DEAN, Relator,** | § | |
| Plaintiffs, | § | **FILED *IN CAMERA*** |
| | § | **AND UNDER SEAL** |
| v. | § | |
| | § | |
| **PARAMEDICS PLUS, L.L.C.;** | § | **Pursuant to** |
| **EMERGENCY MEDICAL SERVICES** | § | **31 USC §3730(b)(2)** |
| **AUTHORITY; EAST TEXAS MEDICAL** | § | |
| **CENTER REGIONAL HEALTHCARE** | § | |
| **SERVICES; EAST TEXAS MEDICAL** | § | **Jury Trial Demanded** |
| **CENTER REGIONAL HEALTHCARE** | § | |
| **SYSTEMS; AMERICAN MEDICAL** | § | |
| **RESPONSE AMBULANCE SERVICE,** | § | |
| **INC.; AMERICAN MEDICAL** | § | |
| **RESPONSE, INC.; ENVISION** | § | |
| **HEALTHCARE CORPORATION f/k/a/** | § | |
| **EMERGENCY MEDICAL SERVICES** | § | |
| **CORPORATION; ENVISION** | § | |
| **HEALTHCARE HOLDINGS, INC.;** | § | |
| **PINELLAS COUNTY EMERGENCY** | § | |
| **MEDICAL SERVICES AUTHORITY;** | § | |
| **COUNTY OF ALAMEDA, CALIFORNIA,** | § | |
| **and THREE RIVERS AMBULANCE** | § | |
| **AUTHORITY.** | | |
| Defendants. | | |

**FIRST AMENDED FALSE CLAIMS ACT COMPLAINT**

**I.
INTRODUCTION**

**1.**      As more completely detailed below, this is an action against Paramedics Plus,

L.L.C. ("Paramedics Plus"); Emergency Medical Services Authority ("EMSA"); East Texas

Medical Center Regional Healthcare Services and East Texas Medical Center Regional

Healthcare Systems (jointly "ETMC"); American Medical Response Ambulance Service, Inc.,

American Medical Response, Inc. (jointly, "AMR"); Envision Healthcare Holdings, Inc. and Envision Healthcare Corporation, f/k/a Emergency Medical Services Corporation (jointly "EHC"); the Pinellas County Emergency Medical Services Authority ("Pinellas EMSA"); Alameda County, California ("Alameda"); and the Three Rivers Ambulance Authority ("TRAA") (collectively the "Defendants"), for fraud and false claims against the United States of America ("U.S." or "federal government") and the States of California, Florida, Oklahoma, and Indiana (collectively the "States").   Relator Stephen Dean ("Relator") contends that Paramedics Plus and its parent companies, ETMC, along with the governmental and quasi-governmental units they contract with, including but not limited to EMSA, Pinellas EMSA, Alameda, and TRAA ("ambulance authorities") have violated federal and state Anti-Kickback Statutes ("AKSs"), and as a result have violated federal and state False Claims Acts ("FCAs.") Relator also contends that AMR and its ultimate parent company, EHC, along with EMSA through its contract with AMR, have violated federal and state Anti-Kickback Statutes ("AKSs"), and as a result have violated federal and state False Claims Acts ("FCAs").

2.    This action is brought to recover losses sustained by health benefit programs funded in whole or in part by the U.S. and/or one of the States, including Medicare, Medicaid, Tricare (formerly known as CHAMPUS), Veterans Administration, federal prison hospitals, Indian Health Services, Federal Employees Compensation Act, Workers Compensation Programs, Railroad Retirement Board, and the Federal Employees Health Benefit Program (collectively, "Government Healthcare Programs.") These losses were sustained in violation of the AKSs and FCAs, as a result of Defendants having offered and/or accepted kickbacks for ambulance and paramedic services paid for by Government Healthcare Programs.

**3.**     Specifically, as part of a strategy to win and keep exclusive contracts for the referral of patients for emergency ambulance and paramedic services, Paramedics Plus has offered and at times paid, and ambulance authorities, including EMSA, Pinellas EMSA, and Alameda, have agreed to receive, and in some cases have actually received, illegal kickbacks, which they have referred to as "rebates," "gain sharing," and payment of "profits in excess of a cap." These illegal kickbacks result from payments to the ambulance authorities by Paramedics Plus of a portion of its collections from Government Healthcare Programs in excess of a specified amount of profit that Paramedics Plus is permitted to retain under these patient-referral contracts – any amount collected above the "profit cap" is paid directly to the ambulance authorities. These illegal schemes are run by Paramedics Plus and its parent, ETMC, from Texas, and impact their business practices in at least Oklahoma; Alameda County, California; Pinellas County, Florida; and Indiana.

**4.**     Also as part of a separate, similar strategy to win and keep exclusive contracts for the referral of patients for emergency ambulance and paramedic services, AMR offered illegal kickbacks to EMSA, and EMSA awarded a contract based on such offer of illegal kickbacks, also referred to as "rebates," "gain sharing," and payment of "profits in excess of a cap." These illegal kickbacks would be payments to EMSA by AMR of a portion of its collections from Government Healthcare Programs in excess of a specified amount of profit that AMR is permitted to retain under these patient-referral contracts – any amount collected above the "profit cap" would be paid directly to EMSA. This illegal scheme is run by AMR and its ultimate parent, EHC, and impacts their business practices in at least Oklahoma.

**5.**     The schemes create a direct conflict of interest for the contracting ambulance authorities in these jurisdictions. The ambulance authorities are charged with overseeing

Paramedics Plus's and AMR's performance and adherence to local rules and regulations, including safety regulations, yet they directly benefit from allowing Paramedics Plus and AMR to reduce costs.  For example, in one case in Oklahoma, EMSA and Paramedics Plus agreed during the contract term to lower the standards for ambulance response times, thereby decreasing Paramedics Plus' costs, swelling its profits, and increasing the kickbacks received by EMSA. The cost saving created by the reduced staffing necessary at Paramedics Plus to meet the loosened response time standards was paid directly to EMSA in rebates.

6.     Relator files this action as a result of the Defendants' violations of the federal False Claims Act, 31 U.S.C. §3379 *et seq.* (the "FCA"); the federal Anti-Kickback Statute, 42 U.S.C. §1320a-7b (the "AKS"); California's False Claims Act, CAL. GOV'T CODE § 12650 *et seq.* ("California FCA"); California's Anti-Kickback Statutes, CAL. BUS. & PROF. CODE §650 and §650.1 and CAL. WELF. & INST. CODE §14107.2 ("California AKS"); Florida's False Claims Act, FLA. STAT. Ch. 68.081 *et seq.* ("Florida FCA"); Florida's Anti-Kickback Statute, FLA. STAT. §409.920 ("Florida AKS)"; Indiana's False Claims and Whistleblower Protection Act,  IND. CODE §5-11-5.5-1 et seq.; Indiana's Anti-Kickback Statute, IND. CODE §12-15-24-2; the Oklahoma Medicaid False Claims Act, OKLA. STAT. tit. 63 §§5053.1 *et seq.* ("Oklahoma FCA"); and Oklahoma's Anti-Kickback Statute, 63 Okla. Stat. 1-742 ("Oklahoma AKS.")   (The California FCA, Florida FCA, Indiana FCA, and Oklahoma FCA are collectively referred to as the "State FCAs" and the California AKS, Florida AKS, Indiana AKS, and Oklahoma AKS are collectively referred to as the "State AKSs".)

7.     As a direct result of the Defendants' violations of the FCA, the AKS, the State FCAs and the State AKSs, the U.S.'s and States' treasuries have been damaged in substantial amounts.

4

8.      Relator possesses direct and independent knowledge about Defendants' wrongful acts resulting in the submission of false claims and commission of other unlawful acts with respect to Government Healthcare Programs.  If a public disclosure of Relator's allegations was made prior to the filing of this suit, Relator is nevertheless the original source of all allegations contained within this complaint.

9.      On October 3, 2013, Relator voluntarily disclosed substantially all material evidence and information that he possessed on the fraudulent kickback scheme conducted by Paramedics Plus and EMSA in Oklahoma, Florida and California by serving a disclosure statement and exhibits on Eric Holder, the Attorney General of the United States and on Kevin McClendon, Assistant U.S. Attorney for the Eastern District of Texas.  Then, prior to filing his original Complaint, on March 24, 2014, Relator voluntarily provided an amended disclosure statement and exhibits to Mr. Holder and Mr. McClendon, as well as to the California Attorney General, the Florida Attorney General, CFO of the Florida Department of Financial Services Jeff Atwater, and the Oklahoma Attorney General (Attention Medicaid Fraud Control Unit).

10.     On March 25, 2015, Relator voluntarily served a supplemental disclosure statement to include substantially all material evidence and information that he possesses concerning the fraudulent scheme conducted by Paramedics Plus in Indiana and AMR's fraudulent schemes in Oklahoma, by serving a Third Supplement to Amended Confidential Disclosure Statement and exhibits to Mr. Holder and Mr. McClendon, as well as to the California Attorney General, the Florida Attorney General, CFO of the Florida Department of Financial Services Jeff Atwater, the Oklahoma Attorney General (Attention Medicaid Fraud Control Unit), the Indiana Attorney General, and the Indiana Office of the Inspector General.

11.     The U.S., the States, and Relator (collectively "Plaintiffs') seek treble damages, civil penalties, and other relief arising from Defendants' false claims made in violation of the federal FCA and the Defendants' unlawful acts made in violation of the State FCAs.

## II.
## PARTIES

### A.     Plaintiffs

12.     The United States of America, and the States of California, Florida, Oklahoma, and Indiana are the Plaintiffs on behalf of which Relator brings this action pursuant to the FCA and State FCAs.

13.     Relator Stephen Dean is a resident of Cross Junction, Virginia.   Relator has worked in the emergency services industry for forty years.   Relator was employed by Paramedics Plus in several positions in Oklahoma from September 2, 2007 through September 12, 2013. After being placed on administrative leave on September 12, 2013, Relator's employment was terminated by Paramedics Plus on October 31, 2013.   From September 2, 2007 to November 9, 2009, Relator's title at Paramedics Plus was "Director of Corporate Training"; from November 9, 2009 to March 27, 2012, his title was "Chief Operating Officer – Oklahoma"; and from March 27, 2012 through October 31, 2013, he served as "Corporate Deployment Director."

### B.     Defendants

14.     A trust created on December 1, 1977 and amended on March 23, 1990, EMSA is the primary ambulance service provider for both Tulsa and Oklahoma City, Oklahoma.

15.     The purposes of the EMSA trust include: to operate or cause to be operated and to furnish and supply an emergency medical services system; to charge and collect user fees for the use of the ambulance services; and to acquire by lease, purchase, or otherwise, and to hold,

construct, install, equip, repair any and all physical properties and facilities needed to maintain and support the emergency medical services system.

16.     EMSA is governed by an 11-member board which includes four members appointed by the City of Oklahoma City, four members appointed by the City of Tulsa, one member representing the Tulsa-area suburbs, one representing the western division non-beneficiary jurisdictions, and a medical director serving as an ex-officio, who only votes in the case of a tie.

17.     The trust document further specifies that the EMSA board shall consist of at least one licensed attorney, engaged in private practice, at least one person knowledgeable in health care administration, and at least one person knowledgeable in finance, accounting or business administration.

18.     Paramedics Plus is an indirect for-profit subsidiary of nonprofit East Texas Medical Center Regional Healthcare System based in Tyler, Texas and a direct, wholly-owned subsidiary of nonprofit East Texas Medical Center Regional Healthcare Services, Inc., also based in Tyler, Texas. Paramedics Plus has been marketing its ambulance services to ambulance authorities around the country. It has entered into contracts with EMSA as well as Alameda County, California, Pinellas EMSA in Pinellas County, Florida and TRAA in Fort Wayne, Indiana.

19.     Nationwide, over the past five years, Paramedics Plus has had net revenues in excess of $490 million, approximately $294 million of which has come from Government Healthcare Programs.

20.     Paramedics Plus is governed by a Board of Managers, all three members of which are employed by ETMC or one of its affiliated companies. Elmer G. Ellis, the Chairman of

Paramedics Plus, is also the President and Chief Executive Officer of ETMC. Ronald Schwartz, the President of Paramedics Plus, is the Vice-President and Chief Operating Officer of ETMC-EMS, another ETMC affiliate which provides EMS services to communities scattered across East Texas. Finally, Byron Hale, the Chief Financial Officer of Paramedics Plus, also serves as the Chief Financial Officer and Senior Vice-President for ETMC. Hale, as the CFO of Paramedics Plus and ETMC, oversees the payment of the illegal kickbacks.

21.     Additionally, payroll and accounts payable functions are performed for Paramedics Plus by ETMC employees who also handle almost all support and administrative functions for Paramedics Plus.

22.     ETMC owns numerous healthcare related entities, including ETMC-EMS, Paramedics Plus, and fourteen non-profit, tax-exempt hospitals in the East Texas area.  ETMC has had net revenue of approximately $700 million per year for the past five years, and a conservative estimate of the revenue from Government Healthcare Programs is approximately 43% or $300 million per year; over five years, the net revenue ETMC receives from Government Healthcare Programs amounts to approximately $1.5 billion.

23.     The Pinellas EMSA was created by state statute in 1980.  Governed by the Pinellas County Board of County Commissioners, Pinellas EMSA is tasked with making provision for EMS services within in the county.   In order to fulfill these responsibilities, it has contracted with Paramedics Plus for these services.  As a municipal entity and not a state one, Pinellas EMSA is subject to liability under the FCA and Florida FCA.

24.     In California, Alameda County contracts directly with Paramedics Plus for emergency and paramedic services. Like Pinellas EMSA, Alameda County is a person for purposes of the FCA and the California FCA and is liable for its fraudulent activities.

25.     TRAA is the ambulance service for the City of Fort Wayne, Indiana.  It provides all 911 emergency services and all non-emergency ambulance service to the citizens of Fort Wayne.  It was created in 1983 by local ordinance adopted by the Fort Wayne City Council as a not-for-profit, governmental "authority" under Indiana law.

26.     Envision Healthcare Holdings, Inc. is the parent of  Envision Healthcare Corporation f/k/a Emergency Medical Services Corporation. Together, EHC offers an array of healthcare related services to consumers, hospitals, healthcare systems, health plans and local, state and national government entities. EHC owns and operates American Medical Response, Inc., EmCare Holdings, Inc., and Evolution Health, LLC. It appears that American Medical Response Ambulance Services, Inc. is a wholly owned operating subsidiary of American Medical Response, Inc., and is a provider and manager of community-based medical transportation services, including emergency ('911'), non-emergency, managed transportation, fixed-wing air ambulance and disaster response. EmCare is a provider of integrated facility-based physician services, including emergency, anesthesiology, hospitalist/inpatient care, radiology, tele-radiology and surgery. Evolution Health provides comprehensive care to patients across various settings, many of whom suffer from advanced illnesses and chronic diseases. The Company is headquartered in Greenwood Village, Colorado.

27.     AMR is authorized to do business in the State of Oklahoma.  It has entered into contracts with EMSA.

### III.
### RESPONDEAT SUPERIOR AND VICARIOUS LIABILITY

28.     When Defendants herein are collectively referred to as the "Defendants", the allegations contained in that sentence and paragraph are alleged severally against each separate Defendant.

29.     Defendants Paramedics Plus and ETMC are related entities, in that these Defendants are entities the operations of which are inextricably intertwined and which were acting in concert together to foster, facilitate and promote the false, fraudulent and unlawful conduct alleged herein.  As such, each of these two Defendants is jointly and severally liable for the actions of the other.  It is alleged that employees and officers of both of these Defendants acted in harmony and concert to commit the unlawful acts specified in this Complaint.

30.     Defendants Paramedics Plus and ETMC are related entities sharing common elements of management, finances, control, supervision, and reporting and thus are mutually, jointly, and severally liable under legal theories of respondeat superior, and the past, present and continuing relations and dealings by and between these related entities are so inextricably intertwined that for purposes of this suit, they should be considered as a single business entity, and/or a joint enterprise in pursuing the scheme made the basis of this suit.

31.     Defendants AMR and EHC are related entities, in that these Defendants are entities the operations of which are inextricably intertwined and which were acting in concert together to foster, facilitate and promote the false, fraudulent and unlawful conduct alleged herein.  As such, each of these two Defendants is jointly and severally liable for the actions of the other.  It is alleged that employees and officers of both of these Defendants acted in harmony and concert to commit the unlawful acts specified in this Complaint.

32.     Defendants AMR and EHC are related entities sharing common elements of management, finances, control, supervision, and reporting and thus are mutually, jointly, and severally liable under legal theories of respondeat superior, and the past, present and continuing relations and dealings by and between these related entities are so inextricably intertwined that

for purposes of this suit, they should be considered as a single business entity, and/or a joint enterprise in pursuing the scheme made the basis of this suit.

## IV.
## JURISDICTION

**33.** This action arises under the FCA, 31 U.S.C. §§3729 *et seq.*, and the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1345.

**34.** This Court also has supplemental jurisdiction over the claims brought by Relator on behalf of the States under the State FCAs, pursuant to 28 U.S.C. §1367(a) and 31 U.S.C. §3732(b).

## V.
## VENUE

**35.** Venue in this district is proper pursuant to 31 U.S.C. §3732(a) and 28 U.S.C. §1391(b) and (c) since one or more of the Defendants transact business in this district and/or one or more of the acts at issue occurred in this district.

## VI.
## OVERVIEW OF GOVERNMENT HEALTHCARE PROGRAMS

**A.** **Medicare**

**36.** In 1965, Congress enacted Title XVIII of the Social Security Act, known as the Health Insurance for the Aged and Disabled Program or the Medicare Program ("Medicare"), to pay for the costs of certain healthcare services. Entitlement to Medicare is based on age, disability, or affliction with end-stage renal disease. See 42 U.S.C. §§426, 426A. The United States Department of Health and Human Services ("HHS") is responsible for the administration and supervision of Medicare, which is funded with taxpayer revenue. The Centers for Medicare and Medicaid Services ("CMS") is an agency of HHS and is directly responsible for the administration of the Medicare Program.

37.     Part A of the Medicare Program authorizes payment for institutional care, including hospital, skilled nursing facility and home healthcare.  See 42 U.S.C. §§1395c-1395i-4. Part B of the Medicare Program covers payment for physician services and certain outpatient services that Part A does not cover.  The services provided by the Defendants are covered by Part B.

38.     Medicare does not cover claims for physician services or outpatient services, including ambulance and paramedic services, where there is an AKS violation involved in the underlying transaction.  Claims submitted to federal healthcare programs where a kickback was offered, paid, solicited, or accepted are false under the FCA.

Providers that seek to bill Medicare must sign a Provider Agreement that states:

I agree to abide by the Medicare laws, regulations and program instructions that apply to [me] … I understand that payment of a claim by Medicare is conditioned upon the claims and the underlying transaction complying with such laws, regulations and program instructions including, but not limited to Federal anti-kickback statute … and on the provider's compliance with all applicable conditions of participation in Medicare.

(Medicare Enrollment Application, CMS-855B, Section 15(A)(3)).

39.     Defendants have submitted or caused to be submitted false claims to Medicare in violation of the FCA through their illegal kickback schemes.

## B.     Medicaid

40.     The Medicaid program is a health insurance program for qualified beneficiaries funded by federal and state taxpayer revenues enacted pursuant to Title XIX of the Social Security Act. 42 U.S.C. §§1396-1396v.  Each state is permitted to design its own medical assistance plan.  42 U.S.C. § 1396a.

41.     Through their kickback schemes, Defendants have submitted or caused to be submitted false claims to the States' Medicaid programs in violation of the FCA and the State

FCAs, thereby violating state and federal laws relating to fraud and abuse in healthcare, and have further concealed that material fact in submitting claims for payment.

## C.   <u>Tricare/Champus</u>

**42.**     At all times relevant to this Complaint, Defendants and many of Defendants' patients were enrolled in, and sought reimbursement from Tricare/Champus.

**43.**     Tricare, previously known as the Civilian Health and Medical Program of the Uniformed Services ("Champus"), is a federal taxpayer-funded program that provides medical benefits to (a) the spouses and unmarried children of (1) active duty and retired service members, and (2) reservists who were ordered to active duty for thirty days or longer; (b) the unmarried spouses and children of deceased service members; and (c) retirees.   Services at non-military facilities are sometimes provided for active duty members of the armed forces, as well. 10 U.S.C. §§1971-1104; 32 C.F.R. §199.4(a).

**44.**     Humana Military Health Services ("Humana") administers the Tricare/Champus program for the Tricare South Region, which includes the relevant states of Florida and Oklahoma.   Humana requires providers to sign a Participation Agreement as a condition of participation in Tricare/Champus.   Among other things, the agreement mandates a provider "[t]o comply with applicable provisions of 32 C.F.R. 199 and related Tricare policy . . ."   (Tricare Policy Manual, Participation Agreement Requirements at p. 3, item 2.).

**45.**     Defendants knew or recklessly disregarded the fact that their kickback schemes violate the FCA with respect to claims paid by Tricare/Champus.

## D.   <u>Other Government Healthcare Programs</u>

**46.**     The Federal Employees Health Benefits Program ("FEHBP") provides healthcare benefits for qualified federal employees and their dependents.   It pays for various services,

including those at issue here. Other Government Healthcare Programs include federal prison hospitals, Indian Health Services, Federal Employees' Compensation Act, Workers' Compensation Programs, Railroad Retirement Board, and Veterans Administration.

47. Reimbursement practices under all federally-funded Government Healthcare Programs closely align with the rules and regulations governing Medicare reimbursement. Defendants knew or recklessly disregarded the fact that their kickback schemes violate the FCA with respect to all Government Healthcare Programs.

## E. The Anti-Kickback Statutes

48. The federal and state AKSs prohibit the knowing and willful offering, paying, solicitation or receipt of remuneration in cash or in kind to induce or reward patient referrals or the generation of business involving any item or service payable by Government Healthcare Programs, including but not limited to Medicaid, Medicare, and Tricare/Champus. 42 U.S.C. §1320a-7b. The AKSs prohibit both the offer and the payment of kickbacks – by those who offer or pay remuneration – and the solicitation or receipt of kickbacks – by those who solicit or receive remuneration. Compliance with the AKSs is a condition of payment imposed by Government Healthcare Programs.

49. The AKSs make it clear that violations of the statutes, like those committed here by Defendants, result in a false claim under the FCA. *See e.g.,* 42 U.S.C. §1320a-7b(g)("In additional to the penalties provided for in this section…a claim that includes items or services resulting from a violation of this section constitutes a false or fraudulent claim for purposes of subchapter III of chapter 37 of title 31."). Additionally, violation of the AKSs can subject the perpetrator to exclusion from participation in the Government Healthcare Programs and civil

monetary penalties of $50,000 per violation and three times the amount of remuneration paid.  42 U.S.C. §1320a-7(b)(7) and 42 U.S.C. §1320a-7a(a)(7).

50.     The Anti-Kickback Statutes are designed to ensure that patient care is not improperly influenced by inappropriate compensation arrangements within the healthcare industry.

51.     Generally, payment of remuneration of any kind violates the AKSs if a kickback was provided to induce the recipient to continue doing business with the provider.  However, the AKSs provide certain safe harbors to exclude specified conduct from their coverage, as long as the involved parties have strictly complied with all the conditions of the safe harbors.

52.     The financial agreements between the Defendants and the ambulance authorities to which Defendants offered and paid remuneration are not protected by any such safe harbors.

## VII.
## FACTUAL ALLEGATIONS

53.     In some locations across the country, emergency medical services are being outsourced.  Instead of providing these services themselves, ambulance authorities have begun contracting with private companies such as Paramedics Plus.  While the terms of each contract are somewhat different, the general idea is that the ambulance authorities will provide certain services and the private companies will operate and staff the ambulances.

54.     Generally, these exclusive contracts are procured through a bidding process or request for proposal ("RFP").  Many of these companies provide identical services; in order to gain a competitive advantage during the RFP process, Paramedics Plus decided to offer kickbacks. These kickbacks are designed to induce the ambulance authorities to select Paramedics Plus in the first place and/or to retain Paramedics Plus as the EMS service provider.

55.     Specifically, Paramedics Plus offers to pay to the ambulance authority a portion of Paramedics Plus's profits, referring to these illegal kickbacks as "rebates," "gain sharing," and/or payments of "profits in excess of cap."  Regardless of the words used, the general idea is the same: Paramedics Plus limits its profit to an agreed-upon percentage, and any remuneration it receives above that percentage is kicked back to the ambulance authorities.

56.     Relator is aware of at least four locations in which Paramedics Plus has utilized this scheme to win and keep exclusive contracts for the referral of patients for emergency ambulance services: the Tulsa-Oklahoma City, Oklahoma area; Pinellas County, Florida; Alameda County, California; and Fort Wayne, Indiana.  Relator has reason to believe that this scheme is utilized by Paramedics Plus throughout the country.

57.     In Oklahoma, Paramedics Plus contracted with the scandal-plagued EMSA from 1998 to 2013.  Paramedics Plus provided ambulance services and billing information to EMSA, which then billed insurance companies and Government Healthcare Programs for the services. Paramedics Plus was paid on a per transport basis by EMSA.  Initially, Paramedics Plus operated under an 11% profit cap, kicking back to EMSA any additional profit.  Then in 2008, Paramedics Plus agreed to lower the profit cap to 10.5% in order to avoid EMSA going through a competitive RFP process in which Paramedics Plus might lose the lucrative contract.

58.     This profit cap idea was expressly incorporated into EMSA's September 26, 2012 RFP; EMSA stated that it "anticipates gain sharing with the contractor during the life of this contract and extension if so granted.  The design of this gain sharing shall constitute all profits above the profit margin as stipulated by the bidder in their response. Profits shall be defined as earnings prior to deductions for corporate overhead, contractual penalties levied on contractor's performance by EMSA and any taxes on earnings."  Thus, as a result of Paramedics Plus's

scheme, the system became a pay-to-play one, in which emergency services companies must be willing to kickback their profits to ambulance authorities in order to provide emergency ambulance services.  Based upon his experience with Paramedics Plus, Relator has reason to believe that some of its competitors have also been engaging in similar  illegal kickback schemes.

**59.**     The initial kickback arrangement between Paramedics Plus and EMSA was the product of a verbal agreement between Stephen Williamson, the President of EMSA, and Tony Myers (deceased), the then-President of Paramedics Plus.  During the time that Paramedics Plus contracted with EMSA, the kickback arrangement was never expressly incorporated into the written terms of any contract, despite a provision in the contract stating that the entire agreement was contained within the written contract.  This lack of a formal written agreement allowed Paramedics Plus and EMSA to hide their arrangement from auditors.

**60.**     In Oklahoma, the rebate process was triggered when the EMSA CFO would request a rebate either by email or by phone.  The local Paramedics Plus Administrative Director would then prepare a check request form, coding the expense to the "Public Relations" account. The local Paramedics Plus CEO then signed the check request form and forwarded it to the CFO of ETMC EMS.  Next, the check request was signed by the ETMC EMS CFO, who forwarded it to the ETMC Accounts Payable department, which would process the request and issue the check.  The check would be mailed to the local Paramedics Plus Administrative Director and then delivered to either the EMSA CFO or CEO by either the Paramedics Plus CEO or Administrative Director.

**61.**     In the five years prior to the 2013 termination of this contract, Paramedics Plus earned net revenue from the contract of $250 million, of which approximately 60%, or $150

17

million came from Government Healthcare Programs.  Moreover, during that same time frame, the final profit cap of 10.5% resulted in over $15 million of kickbacks being paid to EMSA by Paramedics Plus from funds received from Government Healthcare Programs.

62.     A similar arrangement is in place in Pinellas County, Florida.  In 2004, Paramedics Plus began running Pinellas County's ambulance service pursuant to an initial five year contract.  As in Oklahoma, Pinellas County does the billing for the services.

63.     The contract between Paramedics Plus and Pinellas County provides that "[i]f profits exceed nine percent (9%) annually, the excess will be utilized in and for the EMS system," providing substantial illegal kickbacks to the ambulance authority.

64.     Over the past five years, Paramedics Plus has had net revenue from this contract of approximately $150 million.  Assuming its payor mix is similar to that in Oklahoma, 60% of the net revenue, or $90 million, comes from Government Healthcare Programs.

65.     The agreement in Alameda County, California is slightly different, in that Paramedics Plus both provides the ambulance services and is responsible for the billing.  This five-year contract, which began in November 2011, states that there is a 7% profit cap of net earnings.

66.     Since November 2011, Paramedics Plus has had net revenue from this contract of approximately $90 million, 60% of which, $54 million, can be attributed to payments from Government Healthcare Programs.

67.     On December 8, 2008, Paramedics Plus submitted a proposal to the Three Rivers Ambulance Authority ("TRAA") in Fort Wayne, Indiana.

68.     TRAA provides ambulance service through a contractor that it both retains to operate as TRAA's Operations Division and then directly oversees to ensure compliance with

such contractual obligations as response time requirements.   Ostensibly to ensure continued efficiency and fiscal responsibility, TRAA periodically opens the contract to competitive bidding by other entities.  This competitive procurement process is intended to assure that the community receives excellent care at a competitive price.

69.     In a December 2008 proposal to TRAA, Paramedics Plus promised to "cap its profits at 12%, before taxes." The proposal explains that the company had implemented the same scheme with EMSA, boasting that Paramedics Plus had "given millions back to clients" under the system, including "over $7,000,000 to EMSA."   In other words, Paramedics Plus proposed the same illegal kickbacks to TRAA that it was paying to EMSA in order to induce TRAA to enter into a contract with Paramedics Plus for the exclusive referral of patients for emergency and nonemergency ambulance services, largely funded by federal health care programs.

70.     TRAA agreed to the scheme by awarding the contract to Paramedics Plus, effective July 1, 2009.

71.     In 2013, in Oklahoma, AMR took over the work previously contracted to Paramedics Plus by EMSA. AMR won the contract by agreeing to not only continue the illegal "gain sharing" perpetrated by EMSA, but also to provide additional goods and services to EMSA, in violation of the Anti-Kickback Statute.

72.     A veiled reference to the kickbacks involved in this scheme was included in EMSA's September 26, 2012 written Request for Proposal (RFP) and subsequent competitive bid process for the term starting November 1, 2013. The kickback arrangement was described in the RFP as "gain sharing." The RFP states:

> "EMSA anticipates gain sharing with the contractor during the life of this contract and extension if so granted.

> The design of this gain sharing shall constitute all profits above the profit margin as stipulated by the bidder in their response.
>
> Profit shall be defined as earnings prior to deductions for corporate overhead, contractual penalties levied on contractor's performance by EMSA and any taxes on earnings."

73.     EMSA awarded that contract to AMR. That contract contains a requirement that AMR pay EMSA an amount each year equal to its profits from the contract, defined as described in the RFP, exceeding 10%. In other words, the contract creates an illegal kickback scheme virtually identical to that between EMSA and Paramedics Plus, except that EMSA has apparently attempted to address one aspect of the conflict of interest created by the scheme by excluding penalties for poor performance from the definition of profit.

74.     In addition to accepting the provision in the RFP related to "gain sharing," AMR made the following additional promises in its response to the RFP.

> "AMR will establish a System Enhancement Fund to fund internal clinical enhancements at EMSA. AMR will contribute $150,000 to this fund annually. Funds can be made available as part of annual check given to EMSA or as a significant system enhancement. We offer to front-load the fund with up to three year's payments to allow EMSA to use the fund to immediately make a substantial purchase if it wishes…
>
> To provide internal staff support to the Office of the EMSA Medical Director, AMR is proposing funding in the amount of $100,000 per year that the Medical Director can use to hire clinical staff…
>
> As our community services programming evolves throughout the term of the contract, so will the needs for specific equipment. We are proposing to offer an annual community training equipment fund of $10,000, which will be used to purchase needed training equipment as needed and after consultation with EMSA's community relations team…
>
> AMR offers full access to the EMD Advancement Series™ at no cost. This program offers computerized learning modules tailored specifically to Pro-QA EMO training and re -certification requirements…

20

AMR will provide scholarships for two eligible communications center employee - one from Oklahoma City and one from Tulsa - to attend the annual NAVIGATOR conference, sponsored by International Academies of Emergency Dispatch. This educational conference is geared to police, fire, and medical dispatch personnel…

To supplement our leadership training program for EMSA, we are proposing to offer scholarships to two individuals per year to attend the Ambulance Service Managers (ASM) training program…

AMR proposes to sponsor an annual EMSA EMS Leadership Conference in Tulsa or Oklahoma City. We will organize and fund the conference, which will be developed in cooperation with EMSA and the EMSA Medical Director, and marketed to EMS leaders across the country…

If EMSA does not achieve the resale value it expected at auction - and as defined cooperatively with AMR at the beginning of the contract - we will either purchase the vehicle for the defined amount or make up any difference…

AMR will pay for all technicians to become Emergency Vehicle Technician (EVT) certified, if they have not already done so. As part of our commitment to secure Ford warranty repair authorization for the EMSA maintenance facilities, we will also enroll all EMSA technicians in the Ford Factory Stars Training Program. This program is currently in place for our AMR fleet technicians across the country…

AMR will provide EMSA service technicians with an annual $1,000 tool allowance."

75.     These promised kickbacks and other promises made in AMR's proposal were all incorporated into the contract between AMR and EMSA.

76.     These promised kickbacks for the referral of patients for ambulance services, paid to win and keep the exclusive referral contract, appear unlawful on their face. Promising to share profits with the governmental authority responsible for regulatory oversight creates a direct conflict of interest for the agency. And, as shown above, AMR not only promised to share

profits with EMSA: it also offered and paid significant "enhancements" to EMSA, along with other kickbacks, to win and keep the exclusive referral contract in Oklahoma.

77.     The offers of kickbacks made by Paramedics Plus and AMR, and accepted by the ambulance authorities, have as their purpose inducing the referral of patients for ambulance services, and are unlawful.   Sharing profits, or simply offering to share profits, with these ambulance authorities creates a direct conflict of interest for those entities.   In each of the communities in which Paramedics Plus or AMR has entered into a kickback arrangement, the ambulance authority charged with overseeing the company's performance and adherence to local rules and regulations, including safety regulations, is the entity that would receive a share of the company's profits as a "rebate."   Additionally, these kickbacks can improperly subvert the competitive bidding process, precluding other, potentially more qualified companies, from gaining the contracts and thus depriving customers of the best service possible.

78.     Additional harm results from the failure to publicly identify the kickbacks, opting instead to vaguely describe them as "profit caps" without further explanation.

79.     The Office of Inspector General ("OIG") for the Department of Health and Human Services voiced similar concerns about the provision of kickbacks in its recent November 27, 2013 Advisory Opinion No. 13-18.

80.     In this opinion, OIG examined a proposed arrangement between a city and a company that would be providing emergency ambulance services for the city.   Specifically, the agreement would require the company to provide the city with "two complete suction units, including chargers and 1200cc disposable bottles, pursuant to a nominal value lease not to exceed $1.00 for the two-year contract term; and two automated external defibrillators and two

pulse oxygenators, pursuant to a nominal value lease not to exceed $1.00 for the two-year contract term."

81.     OIG determined that based on this arrangement, it could not "conclude that the Proposed Arrangement would present a minimal risk of fraud and abuse in connection with the anti-kickback statute."

82.     OIG noted that "the provision of these items and services at nominal or no cost to the [c]ity in exchange for the opportunity to be the [c]ity's exclusive supplier of emergency ambulance services, including those payable by Federal health care programs, would fit squarely within the language of the anti-kickback statute."

83.     The arrangement examined by OIG is strikingly similar to what is occurring between Paramedics Plus and AMR and the ambulance authorities with which they are contracting.   Paramedics Plus is paying a substantial portion of its profits to the ambulance authorities in exchange for the opportunity to be the ambulance authority's exclusive supplier of emergency ambulance services.  AMR has promised to do the same.

84.     These arrangements violate the federal and state Anti-Kickback Statutes.  They result in Defendants submitting or causing to be submitted false claims and fraudulent bills to Government Healthcare Programs. Based upon Relator's estimates, these practices resulted in millions of dollars of improper taxpayer-funded payments made by Government Healthcare Programs to Defendants.

### VIII.
### COUNTS AGAINST DEFENDANTS

**Count 1:**     **Violations of the FCA by All Defendants (pursuant to 31 U.S.C. 3729(a)(1), 31 U.S.C. 3729(a)(2), 31 U.S.C. 3729(a)(3) [for violations before June 7, 2008] and pursuant to 31 U.S.C. 3729(a)(1)(A), 31 U.S.C. 3729(a)(1)(B), 31 U.S.C. 3729(a)(1)(C) [for violations on or after June 7, 2008]**

85.     Relator, acting in the name of and on behalf of the United States and himself, realleges the preceding paragraphs of this Complaint.

86.     This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. §3729 *et seq*.

87.     As described above, Defendants Paramedic Plus, ETMC, AMR and EHC have, through the offer and/or payment of illegal kickbacks, fraudulently induced ambulance authorities to use ambulance services provided by Paramedics Plus and AMR, and Defendants EMSA, Pinellas EMSA, Alameda, TRAA and undoubtedly other ambulance authorities have, through their solicitation, acceptance and/or receipt of such illegal kickbacks or offers of kickbacks from Paramedics Plus and AMR, been complicit in the kickback scheme.

88.     Prior to June 7, 2008 these illegal kickbacks have resulted in the Defendants

   a.     knowingly presenting, or causing to be presented to an officer or employee of the United States Government, a false or fraudulent claim for payment or approval by Government Healthcare Programs, in violation of Section 3729(a)(1) of the FCA;

   b.     knowingly making, using, or causing to made or used, a false record statement to get a false or fraudulent claim paid or approved by Government Health Programs in violation of Section 3729(a)(2) of the FCA; and

   c.     conspiring to defraud the United States Government by getting a false or fraudulent claim paid or allowed in violation of Section 3729(a)(3) of the FCA.

89.     On or after June 7, 2008, Defendants violated the FCA in the following respects:

   a.     knowingly presenting, or causing to be presented, false claims for payment or approval by Government Healthcare Programs, in violation of Section 3729(a)(1)(A) of the FCA;

   b.     knowingly making, using or causing to be made or used, false records or statements material to false claims to Government Healthcare Programs, in violation of Section 3729(a)(1)(B) of the FCA; and

      c.      conspiring to commit violations of subparagraphs (A) and (B), in violation of Section 3729(a)(1)(C) of the FCA.

90.     Paramedics Plus, ETMC, AMR and EHC violated Sections 3729(a)(1)(A), and 3729(a)(1)(B), and knowingly caused false claims to be made, used and presented to the United States by their violations of federal and state laws, including but not limited to 42 U.S.C. §1320a-7b, by inducing ambulance authorities to contract with Paramedics Plus and AMR for emergency ambulance services through the use of kickbacks, as described herein.

91.     EMSA, Alameda, Pinellas EMSA, and TRAA violated Sections 3729(a)(1)(A) and 3729(a)(1)(B) and knowingly caused false claims to be made, used and presented to the United States by their violations of federal and state laws, including but not limited to 42 U.S.C. §1320a-7b, by accepting kickbacks from Paramedics Plus, ETMC, AMR and/or EHC, as described herein.

92.     Defendants further violated Section 3729(a)(1)(C) by conspiring to have false and/or fraudulent claims allowed or paid.

**Count 2:**      **Violations of the Anti-Kickback Statute, 42 U.S.C. §1320a-7b, Against All Defendants**

93.     Relator, acting in the name of and on behalf of the United States and himself, realleges and incorporates by reference the allegations in the preceding paragraphs of this Complaint.

94.     The Medicare and Medicaid Patient Protection Act of 1987, 42 U.S.C. §1320a-7b, provides criminal penalties of up to $25,000 or five years in jail or both for violations of the Anti-Kickback Statute.  42 U.S.C. §1320a-7b(b).

95.     Each claim for reimbursement for Defendants' services represents a false claim for payment because each claim for emergency ambulance services carried with it a false

certification by Defendants that the service they provided complied with the Anti-Kickback Statute.

96.     Defendants have violated the Anti-Kickback Statute by implementing programs that provided a direct and substantial financial incentive to induce ambulance authorities to use Paramedic Plus's and/or AMR's emergency ambulance services.

97.     Unaware of the falsity of the records, statements, and claims made or caused to be made by Defendants and in reliance on the truthfulness and accuracy of Defendants' certifications, the United States paid and continues to pay on claims that would not be paid but for Defendants' wrongful actions and omissions.

98.     Defendants' actions constitute false claims and statements under 31 U.S.C. §3729 *et seq.,* pursuant to 42 U.S.C. §1320a-7b(g).

**Count 3:     Violations of the California False Claims Act, CAL. GOV'T CODE § 12651(a), Against Paramedics Plus, ETMC, and Alameda**

99.     Relator, acting in the name of and on behalf of California and himself, realleges the preceding paragraphs of this Complaint.

100.    This is a *qui tam* action brought by Relator on behalf of the State of California to recover treble damages and civil penalties under the California False Claims Act, CAL. GOV'T CODE § 12650 *et seq.*

101.    CAL. GOV'T CODE § 12651(a), in part, provides liability for any person who

        1.     Knowingly presents or causes to be presented a false claim for payment or approval.

        2.     Knowingly makes, uses, or causes to be made or used a false record or statement material to a false or fraudulent claim.

        3.     Conspires to commit a violation of this subdivision.

**102.**    In addition, the payment or receipt of bribes or kickbacks is prohibited under CAL. BUS. & PROF. CODE § 650 and 650.1, and is also specifically prohibited in treatment of Medi-Cal patients pursuant to CAL. WELF. & INST. CODE §14107.2.

**103.**    Paramedics Plus and ETMC, violated CAL. GOV'T CODE § 12651(a) and knowingly caused false claims to be made, used and presented to the State of California and knowingly made, used and caused to be made and used false records and statements to get false claims paid or approved by the State of California by their violations of federal and state laws, including, CAL. BUS. & PROF. CODE § 650-650.1 and CAL. WELF. INST. CODE § 14107.2, by inducing ambulance authorities, including but not limited to Alameda, to contract with Paramedics Plus for emergency ambulance services through the use of kickbacks, as described herein.

**104.**    Alameda violated CAL. GOV'T CODE § 12651(a) and knowingly caused false claims to be made, used and presented to the State of California and knowingly made, used and caused to be made and used false records and statements to get false claims paid or approved by the State of California by its violations of federal and state laws, including, CAL. BUS. & PROF. CODE § 650-650.1 and CAL. WELF. INST. CODE § 14107.2, by accepting kickbacks or offers of kickbacks, from Paramedics Plus and ETMC, as described herein.

**105.**    Paramedics Plus, ETMC, and Alameda further violated CAL. GOV'T CODE § 12651(a) by conspiring to have false and/or fraudulent claims allowed or paid.

**106.**    The State of California, by and through the California Medicaid program and other state health care programs, was unaware of Paramedics Plus, ETMC, and Alameda's fraudulent and illegal practices and paid the claims submitted in connection therewith.

107.    Compliance with applicable Medicare, Medi-Cal and various other federal and state laws was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of California in connection with Paramedics Plus, ETMC, and Alameda's fraudulent and illegal practices.

108.    Had the State of California known that Paramedics Plus, ETMC, and Alameda violated the laws cited herein, it would not have paid the claims submitted in connection with Paramedics Plus, ETMC, and Alameda's fraudulent and illegal practices.

109.    As a result of Paramedics Plus, ETMC, and Alameda's violations of CAL. GOV'T CODE §12651(a), the State of California has been damaged to the extent of millions of dollars, exclusive of interest.

110.    Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to CAL. GOV'T CODE § 12652(c) on behalf of himself and the State of California.

111.    This Court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same facts as the federal claim, and merely asserts separate damages to the State of California in the operation of its Medicaid program.

**Count 4:**      **Violations of the Florida False Claims Act, Fla. Stat. §68.082(2)(a), (b), *et seq.*, Against Paramedics Plus, ETMC,  and Pinellas EMSA**

112.    Relator, acting in the name of and on behalf of Florida and himself, realleges the preceding paragraphs of this Complaint.

113.    This is a *qui tam* action brought by Relator on behalf of the State of Florida to recover treble damages and civil penalties under the Florida False Claims Act, FLA. STAT. §68.082 *et seq.*

114.    FLA. STAT. §68.082(2), in part, provides liability for any person who-

(a)      Knowingly presents or causes to be presented to an officer or employee of an agency a false or fraudulent claim for payment or approval;

(b)      Knowingly makes, uses, or causes to be made or used a false record or statement to get a false or fraudulent claim paid or approved by an agency;

(c)      Conspires to commit a violation of this subsection[.]

**115.**   In addition, FLA. STAT. §409.920(2)(a)(5) provides that no person may

Knowingly solicit, offer, pay, or receive any remuneration, including any kickback . . . directly or indirectly, overly or covertly, in cash or in kind, in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made, in whole or in part, under the Medicaid program, or in return for obtaining, purchasing, leasing, ordering, or arranging for or recommending, obtaining, purchasing, leasing, or ordering any goods, facility, item, or service, for which payment may be made, in whole or in part under the Medicaid program.

**116.**   Paramedics Plus and ETMC violated FLA. STAT. §68.082(2) and knowingly caused false claims to be made, used and presented to the State of Florida by their violations of federal and state laws, including FLA. STAT. §409.920, by inducing ambulance authorities, including but not limited to Pinellas EMSA, to contract with Paramedics Plus for emergency ambulance services through the use of kickbacks and/or offers of kickbacks, as described herein.

**117.**   Pinellas EMSA violated FLA. STAT. §68.082(2) and knowingly caused false claims to be made, used and presented to the State of Florida by its violations of federal and state laws, including § FLA. STAT. §409.920 by accepting kickbacks and/or offers of kickbacks from Paramedics Plus and ETMC, as described herein.

**118.**   Paramedics Plus, ETMC, and Pinellas EMSA further violated FLA. STAT. §68.082(2) by conspiring to have false and/or fraudulent claims allowed or paid.

119.     The State of Florida, by and through the Florida Medicaid program and other state health care programs, was unaware of Paramedics Plus, ETMC, and Pinellas EMSA's wrongful and illegal practices and paid the claims submitted in connection therewith.

120.     Compliance with applicable Medicare, Medicaid and various other federal and state laws was an implied and, upon information and belief, also an express condition of payment of claims submitted to the State of Florida in connection with Paramedics Plus, ETMC, and Pinellas EMSA's wrongful and illegal practices.

121.     Had the State of Florida known that Paramedics Plus, ETMC, and Pinellas EMSA violated the laws cited herein, it would not have paid the claims submitted in connection with Paramedics Plus, ETMC, and Pinellas EMSA's s wrongful and illegal practices.

122.     As a result of Paramedics Plus, ETMC, and Pinellas EMSA's violations of FLA. STAT. §68.082(2), the State of Florida has been damaged to the extent of millions of dollars, exclusive of interest.

123.     Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to FLA. STAT. §68.083 on behalf of himself and the State of Florida.

124.     This Court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same facts as the federal claim, and merely asserts separate damages to the State of Florida in the operation of its Medicaid program.

**Count 5:**     **Violations of the Oklahoma Medicaid False Claims Act, OKLA. STAT. TIT. 63 §§5053.1 *et seq*., Against Paramedics Plus, ETMC, AMR, EHC and EMSA**

125.     Relator, acting in the name of and on behalf of Oklahoma and himself, realleges the preceding paragraphs of this Complaint.

**126.**     This is a *qui tam* action brought by Relator on behalf of the State of Oklahoma for treble damages and penalties under the Oklahoma Medicaid False Claims Act, OKLA. STAT. tit. 63 §§5053.1 *et seq*.

**127.**     OKLA. STAT. tit. 63 §5053.1(B), in part, provides liability for any person who:

> (1)     knowingly presents, or causes to be presented, to an officer or employee of the State of Oklahoma a false or fraudulent claim for payment or approval;

> (2)     knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the state; [and]

> (3)     conspires to defraud the state by getting a false or fraudulent claim allowed or paid[.]

**128.**     In addition, OKLA. STAT. tit. 63 §1-742 prohibits any person from "intentionally or knowingly pay[ing] to or accept[ing] anything of value from any person, firm…or corporation for securing or soliciting patients for any…other entity providing health care services in this state."

**129.**     Paramedics Plus, ETMC, AMR, and EHC violated OKLA. STAT. tit. 63 §5053.1(B) and knowingly caused false claims to be made, used and presented to Oklahoma by its violations of federal and state law, including OKLA. STAT. tit. 63 §1-742 , by inducing ambulance authorities, including but not limited to EMSA, to contract with Paramedics Plus and AMR for emergency ambulance services through the use of kickbacks or offers of kickbacks, as described herein.

**130.**     EMSA violated OKLA. STAT. tit. 63 §5053.1(B) and knowingly caused false claims to be made, used and presented to the State of Oklahoma by its violations of federal and state laws, including OKLA. STAT. tit. 63 §1-742, by accepting kickbacks from Paramedics Plus, ETMC, and an offer of kickbacks from AMR and EHC as described herein.

**131.**     Paramedics Plus, ETMC, AMR, EHC and EMSA further violated OKLA. STAT. tit. 63 §5053.1(B) by conspiring to have false and/or fraudulent claims allowed or paid.

**132.**     The State of Oklahoma, by and through the Oklahoma Medicaid program and other state health care programs, was unaware of Paramedics Plus, ETMC, AMR, EHC and EMSA's wrongful and illegal practices and paid the claims submitted in connection therewith.

**133.**     Compliance with applicable Medicare, Medicaid and various other federal and state laws was an implied and also an express condition of payment of claims submitted to the State of Oklahoma in connection with Paramedics Plus, ETMC, AMR, EHC and EMSA's wrongful and illegal practices.

**134.**     Had the State of Oklahoma known that Paramedics Plus, ETMC, and EMSA violated the laws cited herein, it would not have paid the claims submitted in connection with Paramedics Plus, ETMC, AMR, EHC and EMSA's wrongful and illegal practices.

**135.**     As a result of Paramedics Plus, ETMC, AMR, EHC and EMSA's violations of OKLA. STAT. tit. 63 §5053.1(B), the State of Oklahoma has been damaged to the extent of millions of dollars, exclusive of interest.

**136.**     Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to OKLA. STAT. tit. 63 §5053.3 on behalf of himself and the State of Oklahoma.

**137.**     This Court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same facts as the federal claim, and merely asserts separate damages to the State of Oklahoma in the operation of its Medicaid program.

**Count 6:**     **Violations of the Indiana False Claims and Whistleblower Protection Act, IND. CODE §5-11-5.5-1 *et seq*., Against Paramedics Plus, ETMC, and TRAA**

**138.**    Relator, acting in the name of and on behalf of Indiana and himself, realleges the preceding paragraphs of this Complaint.

**139.**    This is a *qui tam* action brought by Relator on behalf of the State of Indiana for treble damages and penalties under the Indiana False Claims and Whistleblower Protection Act,  IND. CODE §5-11-5.5-1 *et seq.*

**140.**    IND. CODE §5-11-5.5-2(b), in part, provides liability for any person who knowingly or intentionally:

> (1) presents a false claim to the state for payment or approval;
>
> (2) makes or uses a false record or statement to obtain payment or approval of a false claim from the state;
> …
> (7) conspires with another person to perform an act described in subdivisions (1) through (6); or
>
> (8) causes or induces another person to perform an act described in subdivisions (1) through (6).

**141.**    In addition, pursuant to IND. CODE §12-15-24-2, it is unlawful for a person who furnishes items or services to an individual for which a Medicaid payment is or may be made to solicit, offer, or receive a:

> (1) Kickback or bribe in connection with the furnishing of the items or services or the making or receipt of the payment; or
>
> (2) Rebate of a fee or charge for referring the individual to another person for the furnishing of items or services.

**142.**    Paramedics Plus and ETMC violated IND. CODE §5-11-5.5-2(b)(1) and knowingly caused false claims to be presented to Indiana for payment or approval, by its violations of federal and state law, including IND. CODE §12-15-24-2, by inducing ambulance authorities, including but not limited to TRAA, to contract with Paramedics Plus for emergency ambulance services through the use of kickbacks or offers of kickbacks, as described herein.

33

**143.** Paramedics Plus and ETMC violated IND. CODE §5-11-5.5-2(b)(2) and knowingly made or used a false record or statement to obtain payment or approval of a false claim from the state, by its violations of federal and state law, including IND. CODE §12-15-24-2, by inducing ambulance authorities, including but not limited to TRAA, to contract with Paramedics Plus for emergency ambulance services through the use of kickbacks or offers of kickbacks, as described herein.

**144.** Paramedics Plus, ETMC and TRAA violated IND. CODE §5-11-5.5-2(b)(7) by conspiring with another person to perform an act described in Subdivisions (1) and (2) of IND. CODE §5-11-5.5-2(b).

**145.** Paramedics Plus, ETMC and TRAA violated IND. CODE §5-11-5.5-2(b)(8) when they caused or induced another person to perform an act described in Subdivisions (1), (2) and (7) of IND. CODE §5-11-5.5-2(b).

**146.** The State of Indiana, by and through the Indiana Medicaid program and other state health care programs, was unaware of Paramedics Plus, ETMC and TRAA's wrongful and illegal practices and paid the claims submitted in connection therewith.

**147.** Compliance with applicable Medicare, Medicaid and various other federal and state laws was, on information and belief, an implied and also an express condition of payment of claims submitted to the State of Indiana in connection with Paramedics Plus, ETMC and TRAA's wrongful and illegal practices.

**148.** Had the State of Indiana known that Paramedics Plus, ETMC, and TRAA violated the laws cited herein, it would not have paid the claims submitted in connection with Paramedics Plus, ETMC and TRAA's wrongful and illegal practices.

149.     As a result of Paramedics Plus, ETMC and TRAA's violations of IND. CODE §5-11-5.5-2(b), the State of Indiana has been damaged.

150.     Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to IND. CODE §5-11-5.5-4, on behalf of himself and the State of Indiana.

151.     This Court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same facts as the federal claim, and merely asserts separate damages to the State of Indiana in the operation of its Medicaid program and other state health care programs.

## IX.
## PRAYER FOR RELIEF

### A.     Prayer as to Count 1

152.     Relator prays that this Court enter judgment on behalf of the United States and Relator, and against all Defendants in Count 1, as follows:

a.     An award to the United States of three (3) times the actual damages suffered by the United States as a result of each Defendant's conduct, as provided by §3729(a)(1) of the FCA;

b.     An award to the United States against each Defendant, respectively, of not less than $5500 and not more than $11,000 for each violation of 31 U.S.C. §3729, as provided by §3729(a)(1) of the FCA;

c.     An award of pre-judgment and post-judgment interest, as appropriate, at the highest rate allowed by law;

d.     An award to Relator of a fair and reasonable relator's share to which the Relators are entitled under 31 U.S.C. §3730(b);

e.     An award to Relator of all costs and expenses of this litigation, including statutory attorneys' fees and costs of court pursuant to §3729(a)(3) of the FCA; and

  **f.**  All other relief on behalf of Relator and the United States Government to which they may be justly entitled, under law or in equity, which the District Court deems just and proper.

**B.**  <u>Prayer as to Count 2</u>

 **153.** Relator prays that this Court enter judgment on behalf of the United States and Relator, and against all Defendants in Count 2, as follows:

  **a.**  An award to the United States of three (3) times the actual damages suffered by the United States as a result of each Defendant's conduct, as provided by §3729(a)(1) of the FCA;

  **b.**  An award to the United States against each Defendant, respectively, of not less than $5500 and not more than $11,000 for each violation of 31 U.S.C. §3729, as provided by §3729(a)(1) of the FCA;

  **c.**  An award of pre-judgment and post-judgment interest, as appropriate, at the highest rate allowed by law;

  **d.**  An award to Relator of a fair and reasonable relator's share to which the Relator is entitled under 31 U.S.C. §3730(b);

  **e.**  An award to Relator of all costs and expenses of this litigation, including statutory attorneys' fees and costs of court, pursuant to §3729(a)(3) of the FCA; and

  **f.**  All other relief on behalf of Relator and the United States Government to which they may be justly entitled, under law or in equity, which the District Court deems just and proper.

**C.**  <u>Prayer as to Counts 3 –6</u>

 **154.** Relator respectfully requests this Court to award the following damages to the following parties and against Paramedics Plus, ETMC, and Alameda on Count 3; against Paramedics Plus, ETMC, and Pinellas EMSA on Count 4; and against Paramedics Plus, ETMC, AMR, EHC and EMSA on Count 5, respectively:

  **a.**  To the STATE OF CALIFORNIA:

    (1)  Three times the amount of actual damages which the State of

California has sustained as a result of Paramedics Plus, ETMC, and Alameda's fraudulent and illegal practices;

(2)   A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Paramedics Plus, ETMC, and Alameda presented or caused to be presented to the State of California;

(3)   Prejudgment interest;

(4)   All costs incurred in bringing this action; and

(5)   All other relief to which the State of California may be justly entitled, under law or in equity, which the District Court deems just and proper.

**b.**   To the STATE OF FLORIDA:

(1)   Three times the amount of actual damages which the State of Florida has sustained as a result of Paramedics Plus, ETMC and Pinellas EMSA's fraudulent and illegal practices;

(2)   A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Paramedics Plus, ETMC, and Pinellas EMSA presented or caused to be presented to the State of Florida;

(3)   Prejudgment interest;

(4)   All costs incurred in bringing this action; and

(5)   All other relief to which the State of Florida may be justly entitled, under law or in equity, which the District Court deems just and proper.

**c.**   To the STATE OF OKLAHOMA:

(1)   Three times the amount of actual damages that the State of Oklahoma has sustained as a result of Paramedics Plus, ETMC, AMR, EHC and EMSA's wrongful and illegal practices;

(2)   A civil penalty of not less than $5000 and not more than $10,000 for each false claim which Paramedics Plus, ETMC, AMR, EHC and EMSA presented or caused to be presented to the State of Oklahoma;

(3)   Prejudgment interest;

(4)   All costs incurred in bringing this action; and

(5)   All other relief to which the State of Oklahoma may be justly entitled, under law or in equity, which the District Court deems just and proper.

    **d.**    To the STATE OF INDIANA:

        (6)    Three times the amount of actual damages that the State of Indiana has sustained as a result of Paramedics Plus, ETMC and TRAA's wrongful and illegal practices;

        (7)    A civil penalty of not less than $5000 for each false claim which Paramedics Plus, ETMC and EMSA presented or caused to be presented to the State of Indiana;

        (8)    Prejudgment interest;

        (9)    All costs incurred in bringing this action; and

        (10)    All other relief to which the State of Indiana may be justly entitled, under law or in equity, which the District Court deems just and proper.

    **e.**    To RELATOR Stephen Dean:

        (1)    A fair and reasonable relator's share, as well as relator's attorneys' fees, costs and expenses, as allowed pursuant to CAL. GOV'T CODE §12652 and/or any other applicable provision of law;

        (2)    A fair and reasonable relator's share, as well as relator's attorneys' fees, costs and expenses, as allowed pursuant to FLA. STAT. § 68.085 and/or any other applicable provision of law;

        (3)    A fair and reasonable relator's share, as well as relator's attorneys' fees, costs and expenses, as allowed pursuant to OKLA. STAT. tit. 63 §5053.4;

        (4)    A fair and reasonable relator's share, as well as relator's attorneys' fees, costs and expenses, as allowed pursuant to IND. CODE §5-11-5.5-6; and

        (5)    All other relief to which Relator may be justly entitled, under law or in equity, which the District Court deems just and proper.

## X.
## DEMAND FOR JURY TRIAL

**155.**    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator hereby demands a trial by jury.

Dated:  April 6, 2014.

           Respectfully submitted,

           *Jan Soifer*

           Jan Soifer

           Texas Bar No. 18824530
           Patrick J. O'Connell
           Texas Bar No. 15179900

Jim Haley
Texas Bar No. 08739500
O'Connell & Soifer LLP
98 San Jacinto Blvd., Ste. 540
Austin, Texas  78701
(512) 583-0451 (JS phone)
(512) 852-5918 (PJO phone)
(512) 222-0426 (ADR phone)
jsoifer@oconnellsoifer.com
poconnell@oconnellsoifer.com
jhaley@oconnellsoifer.com

David P. Dean
D.C. Bar No. 437030
Daniel Rosenthal
D.C. Bar No. 1010473
James & Hoffman P.C.
1130 Connecticut Avenue, NW, Suite 950
Washington, DC 20036
(202) 496-0500 (DD phone)
(202) 496-0500 (DR phone)
dpdean@jamhoff.com
dmrosenthal@jamhoff.com

**Counsel For Plaintiff Relator
Stephen Dean**

## CERTIFICATE OF SERVICE

A copy of this sealed pleading has been provided to the following representatives of the United States of America, and States of California, Florida, Oklahoma, and Indiana on April 6, 2015.

| | |
|---|---|
| Attorney General **Eric H. Holder Jr.** | Asst. U.S. Attorney James Gillingham |
| U.S. Department of Justice | United States Attorney's Office |
| 950 Pennsylvania Avenue, NW | 110 North College, Suite 700 |
| Washington, DC 20530-0001 | Tyler, TX 75702 |
| | |
| Pam Bondi | Jeff Atwater, CFO |
| Florida Attorney General | Florida Department of Financial Services |
| The Capitol, PL 01 | 200 E. Gaines St. |
| Tallahassee, FL 32399-1050 | Tallahassee, FL 32399 |

Kamala Harris
California Attorney General
1300 I St., Ste. 1740
Sacramento, CA 95814

Greg Zoeller
Indiana Attorney General
Indiana Government Center South,
5th Floor
302 West Washington Street
Indianapolis, IN 46204

Niki Batt, Assistant Attorney General
ATTN:  Medicaid Fraud Control Unit
Oklahoma Office of Attorney General
313 NE 21st Street
Oklahoma City, OK 73105

Cynthia Carrasco
Office of the Inspector General
315 West Ohio Street, Room 104
Indianapolis, IN 40202

Jan Soifer