**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| *ex rel.* STEPHEN DEAN, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| PARAMEDICS PLUS, LLC, | § | CIVIL ACTION NO. 4:14-CV-203 |
| EAST TEXAS MEDICAL CENTER | § | |
| REGIONAL HEALTHCARE SYSTEM, | § | |
| INC., EAST TEXAS MEDICAL | § | |
| CENTER REGIONAL HEALTH | § | ORAL HEARING REQUESTED |
| SERVICES, INC., | § | |
| EMERGENCY MEDICAL SERVICES | § | |
| AUTHORITY, and | § | |
| HERBERT STEPHEN WILLIAMSON, | § | |
| | § | |
| Defendants. | § | |

<u>**MOTION OF DEFENDANTS EAST TEXAS REGIONAL HEALTHCARE SERVICES,
INC. AND EAST TEXAS REGIONAL HEALTHCARE SYSTEM, INC. TO DISMISS
THE STATE OF OKLAHOMA'S COMPLAINT IN PARTIAL INTERVENTION**</u>

East Texas Medical Center Regional Healthcare Services, Inc. ("Services") and East

Texas Medical Center Regional Healthcare System, Inc. (the "System"), two of the defendants in

the above-captioned proceeding, move the Court for dismissal of the claims set forth against

them in The State of Oklahoma's Complaint in Partial Intervention ("Complaint") filed by the

State of Oklahoma ("State") on behalf of the Oklahoma Medicaid Program.

## I.    <u>INTRODUCTION</u>

The State brings this action for alleged violations of the Oklahoma Medicaid False

Claims Act ("OFCA"), 63 O.S. § 5053, *et seq.*, the Oklahoma Medicaid Program Integrity Act

("MPIA"), 56 O.S. § 5053, *et seq.*, and "the common law." Complaint ¶ 2. The case was

originally filed as a *qui tam* action by relator Stephen Dean ("Dean") in 2014. (Docket Nos. 1,

6). Almost three years later, the United States partially intervened and filed a Complaint in Partial Intervention. (Docket Nos. 25, 28). The State partially intervened and filed its Complaint shortly thereafter. (Docket Nos. 25, 36).  In addition to Services and the System, the State names as defendants Paramedics Plus, LLC ("PMP"), Emergency Medical Services Authority ("EMSA"), and Herbert Stephen Williamson ("Williamson"). *Id.*, ¶¶ 1, 21-23. The State alleges claims--apparently against all defendants--for (i) violations of the OFCA in three respects (Counts II, III, IV), (ii) violations of the MPIA in two respects (Counts I, V), (iv) fraud (Count VI), (iii) civil conspiracy (Count VII), and (v) unjust enrichment (Count VIII). *Id.* at ¶¶ 154-184.

Broadly speaking, the Complaint alleges that, from 1998-2013, "[PMP] and its parent company ETMC," *Id.* at ¶ 3, "engaged in a kickback scheme" with EMSA--the ambulance authority for Oklahoma City and Tulsa, Oklahoma--and Williamson, its President. *Id.* at ¶ 3, 7.[1] The charge apparently is that, in return for receiving and keeping an exclusive contract to provide the emergency ambulance services in those cities, "ETMC" and PMP paid kickbacks and bribes to Williamson and EMSA. *Id.* at ¶¶ 3, 7, 10. According to the State, that conduct violated the MPIA, the OFCA, and the federal Anti-Kickback Statute ("AKS"), 42 U.S.C. § 1320a-7b(b), and allegedly "caused" EMSA to submit false claims to Oklahoma Medicaid. *Id.* at ¶ 15.

There is no merit to any of this. PMP, Services, and the System neither offered, nor paid, any kickbacks or bribes to EMSA, Williamson, or anyone else. Funds remitted to EMSA by (or on behalf of) PMP were to "true-up" the amounts due PMP for services rendered. Those sums were not intended to--and did not--violate the AKS or any other law. Indeed, the "profit cap" decried by the State is now commonplace in the ambulance service industry.

---

[1] Following the treatment adopted by Dean and the United States, the State treats Services and the System as a single entity labeled "ETMC." *See* Complaint at 1. As explained below, we reject that treatment - which infects the Complaint throughout - as substantively incorrect and procedurally improper. Services and the System are separate corporate entities and there is no basis for collectivizing them as "ETMC."

Further, as explained in the motions to dismiss the claims of the United States, the alleged violations set forth in the Complaint neither identify--nor even allege--any economic damages. For example, the Complaint does not allege that EMSA billed Oklahoma Medicaid for any service not actually provided. Likewise, it does not allege overcharges or inflated billings by EMSA and, indeed, could not do so because like Medicare, Medicaid pays fixed amounts for the services EMSA billed. Correlatively, the State does not allege that PMP overcharged EMSA in any respect, or even that any patient transported by PMP received substandard or inadequate care. Thus, as the effective purchaser of the medical services provided to Oklahoma Medicaid beneficiaries, the State received the full value of all services billed by EMSA.

Most importantly (at least for purposes of this Motion), the State's allegations against Services and the System are insufficient under Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6) to plead any violation of the MPIA, the OFCA, the AKS, or "the common law." Treating Services and the System as a single entity labeled "ETMC" gives neither defendant fair notice of the conduct with which it is charged, thereby running afoul of Rule 8(a). Likewise, the State's efforts to lump together "ETMC" and PMP when describing contracts and various payments fails to provide fair notice under Rule 8(a). Further, the Complaint fails to allege even a facially plausible claim for violation of the MPIA, the OFCA, the AKS, or "the common law" by either Services or the System, let alone with the specificity required by Rule 9(b).

Finally, the Complaint's allegations are substantively fruitless. Among other reasons, (i) at least the portion of the MPIA that forms the basis for Count I is facially inapplicable to Services and the System, (ii) the "kickback" agreement alleged by the State occurred prior to the effective date of the OFCA, and the OFCA does not apply retroactively, and (iii) Services and the System filed no false claims (or any claims at all), did not "cause" (and could not have

caused) EMSA to file false claims, and received no payments from Oklahoma Medicaid. Thus, for the reasons set forth below, as well as the reasons set forth in PMP's motion to dismiss, the claims against Services and the System should be dismissed.

## II.      STATEMENT OF ISSUE TO BE DECIDED

Should the claims against Services and the System be dismissed for failure of the Complaint to adequately plead or otherwise state a plausible claim for relief?

## III.      STANDARDS APPLICABLE TO THE MOTION

As noted above, Services and the System seek dismissal of the claims against them pursuant to Rules 8(a), 9(b), and 12(b)(6). In *U.S. ex rel. Fisher v. Homeward Residential, Inc.*, 2015 U.S. Dist. LEXIS 78637 (E.D. Tex. June 17, 2015) (Mazzant, J.), the Court recited the standards applicable to a motion to dismiss FCA claims on these bases. Further, in *U.S. ex rel. Jackson v. Univ. of N. Texas*, 2015 U.S. Dist. LEXIS 175706 (E.D. Tex. November 18, 2015), *adopted*, 2016 U.S. Dist. LEXIS 11304 (E.D. Tex. February 1, 2016) (Mazzant, J.), Magistrate Judge Nowak similarly articulated the standards applicable in that context. The same standards apply to the State's claims. Thus, as explained at length in the cases cited above, the standards of review applicable to the instant Motion are as follows.

1.      A Rule 12(b)(6) motion argues that the complaint fails to assert facts that give rise to legal liability. *Jackson, supra*, at *11. The Federal Rules of Civil Procedure require that each claim in a complaint include a short and plain statement showing that the pleader is entitled to relief. *Id.* at *11-*12 (quoting FED. R. CIV. P. 8(a)(2)). "The claims must include enough factual allegations 'to raise a right to relief above the speculative level.'" *Id.* at *12 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Under the *Twombly* standard, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its

face. *Id.* (quoting *Gonzalez v. Kay*, 577 F. 3d 600, 603 (5th Cir. 2009) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "'A claim has facial plausibility when the [government] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Gonzalez, supra*, at 603). Thus, to survive the motion to dismiss, the Complaint must contain sufficient factual allegations to enable the Court to draw the reasonable inference that Services and System are liable for the misconduct alleged.

2.      "A complaint…under the FCA must [also] meet the heightened pleading standard of…[Rule 9(b)], which states '[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.'" *Jackson, supra*, at *10 (quoting FED. R. CIV. P. 9(b) and citing *U.S. ex rel. Grubbs v. Kanneganti*, 565 F. 3d 180, 185 (5th Cir. 2009)). "Pleading fraud with particularity in the Fifth Circuit 'requires 'time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby.''" *Id.* (quoting *Williams v. WMX Techs., Inc.*, 112 F. 3d 175, 178 (5th Cir. 1997). "Rule 9(b) also 'requires a plaintiff to…explain why the statements were fraudulent.'" *Id.* at *10-11 (quoting *Williams, supra*, at 177-78). "Relators must 'set forth *specific facts* supporting an inference of fraud,' and 'simple allegations that a defendant possesses fraudulent intent will not satisfy Rule 9(b).'" *Id.* at *11 (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F. 3d 333, 339 (5th Cir. 2008) (quotations omitted) (emphasis in original).

3.      In deciding the Motion, the Court accepts the Complaint's well-pleaded allegations as true, but may not accept as true "conclusory allegations, unwarranted deductions, or legal conclusions." *Hall v. Phenix Investigations, Inc.*, 642 Fed. App'x 402, 404 (5th Cir. 2016) (citation omitted). In this regard, the Court takes a two-step approach, first identifying and disregarding the Complaint's conclusory allegations, and then determining whether the

allegations plausibly suggest an entitlement to relief. *Jackson, supra*, at *13 (quoting *Iqbal, supra*, at 681). "This evaluation will 'be a context-specific task that requires the…[Court] to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal, supra*, at 679). I

## IV.   ARGUMENT

The Complaint alleges that, through a contractor, EMSA provided emergency and non-emergency transport services for Oklahoma City and Tulsa. *See* Complaint at ¶ 22. More specifically, EMSA owns or leases ambulances, but does not employ the personnel who staff the ambulances, *i.e.*, drivers, EMTS, and paramedics. *Id.* at ¶ 4. "Instead, EMSA contracts with a private contractor for drivers, EMTS, paramedics, and other personnel that actually perform health care services." *Id.* After ambulance and/or paramedic services are provided to a patient, EMSA bills the "appropriate party" for the services provided. In *some* cases, the "appropriate party" is Medicare or Oklahoma Medicaid while, in other cases, the "appropriate party" will be a private health insurer, the individual patient, or some other private payor. *Id.* at ¶¶ 4, 22. At all times relevant herein, PMP was the contractor EMSA used to provide the specified services.[2]

Similar (but not identical) to the theory advanced by the United States, the State's theory of the case is twofold. *First*, in violation of the MPIA and the AKS, EMSA and Williamson sought and received kickbacks from "ETMC" and PMP in exchange for awarding a contract to PMP. *Second*, claims that EMSA subsequently submitted to Oklahoma Medicaid were false under the OFCA because, when those claims were submitted, EMSA was not in compliance with

---

[2] From 1994 through 1998, EMSA's contractor was American Medical Response ("AMR"). *See* Complaint, at ¶¶ 6, 51. PMP was then EMSA's contractor until "EMSA's Board voted [on July 24, 2013] to award the…contract back to AMR…." *Id.* ¶ 136. Notably, as Dean alleged, EMSA's contract with AMR contained a 10% "profit cap." *See* First Amended False Claims Act Complaint ("FAC") at ¶¶ 71-73. The State incorporated Dean's allegations, *see* Complaint at ¶ 1, but it did *not* intervene as to his claims against AMR. *See* The United States' Notice of Partial Intervention. (Docket No. 25) (also noting partial intervention by the State). At Dean's request, and with the State's express consent, the Court dismissed Dean's claims against AMR. (Docket Nos. 43, 45, 46).

state and federal law, yet certified--either expressly or impliedly--to the contrary. Thus, the State alleges that EMSA filed false claims, and "ETMC" and PMP "caused" the false claims to be filed. Oklahoma Medicaid allegedly suffered "damages" by EMSA's false claims, *id.* ¶¶ 138-152, but, as noted above, the Complaint alleges neither any deficiency in the services provided by EMSA, nor any economic damages suffered by the State. And as also noted above, there is no merit to any of the State's claims against Services and the System. Accordingly, for the reasons that follow, all claims against Services and the System should be dismissed.

### A.      The Complaint Does Not Provide Fair Notice to Services and the System.

The Complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the…[State] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8(a)(2) is to give defendants fair notice of the claim and the grounds upon which it rests. *Twombly, supra*, at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "'An adequate complaint" for purposes of Rule 8(a)(2), must therefore 'provide fair notice to the defendants and state a facially plausible legal claim.'" *Hamilton v. Partners Healthcare Sys.*, 2016 U.S. Dist. LEXIS 95469, *9 (D. Mass. July 21, 2016) (quoting *Ocasio-Hernandez v. Fortuño-Burset*, 640 F. 3d 1, 12 (1st Cir. 2011)). Thus, "[f]or a complaint to meet the…requirements of Rule 8(a)(2) and…survive a Rule 12(b)(6) motion to dismiss…every element of each cause of action must be supported by *specific factual allegations*…." *Kan v. OneWest Bank, FSB*, 823 F. Supp. 2d 464, 468 (W.D. Tex. 2011) (emphasis added). For two reasons, the Complaint fails to give fair notice to Services and the System and should be dismissed for non-compliance with Rule 8(a)(2).

*First*, although the State acknowledges that Services and the System are distinct corporate entities, *see* Complaint at ¶¶ 19-20, it defines and treats them as one entity labeled

"ETMC." *Id.* at ¶ 1.[3] This treatment persists throughout the Complaint, with the State (i) making no distinction between Services and the System, and (ii) failing to set forth any *specific factual allegation* of what either is individually accused of doing. The result is that the Complaint fails to give Services and the System adequate notice of the grounds upon which the claims against them rest. Compounding the problem, the State then adopts the protocol of collectivizing all the defendants in its claims for relief, *id.* at ¶¶ 153-184, thereby making it impossible to know which claims are directed at Services (if any), which are directed at the System (if any), and why any of the claims is directed at either. This is patently insufficient under Rule 8(a)(2).[4]

*Second*, the Complaint is a classic example of a universally-reviled "shotgun pleading." *See*, *e.g.*, *Weiland v. Palm Beach County Sheriff's Office*, 792 F. 3d 1313, 1320-23 (11th Cir. 2015). For example, it commits what the Eleventh Circuit has called the "mortal sin" of alleging multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* at 1321-22; *see also* Complaint at ¶¶ 153, 157, 162, 166, 170, 174, 178, 182 (each incorporating "each of the preceding paragraphs…."); *see also, e.g., Martinez v. Foster*, 2014 U.S. Dist. LEXIS 44376, *10-16 (E.D. Tex. Feb. 27, 2014) (ordering a more definite statement in response to a shotgun pleading), *adopted*, 2014 U.S. Dist. LEXIS 41808 (E.D. Tex. March 28, 2014). Further, it commits the less serious (in the Eleventh Circuit's view, at least)

---

[3] Dean's allegations, which the State incorporates, *see* Complaint ¶ 1, correctly identify PMP as a subsidiary of Services and an indirect subsidiary of the System. *See* FAC ¶ 18. In other words, Services is a subsidiary of the System, and PMP is a subsidiary of Services, leaving the System two corporate steps removed from its second-tier subsidiary.

[4] In practical effect, Services and the System are mentioned individually only in the caption of the Complaint, with the collectivized "ETMC" appearing throughout its body. However, "[a] plaintiff cannot state a claim against a defendant [simply] by including the defendant's name in the caption." *Collins v. Kibort*, 143 F. 3d 331, 334 (7th Cir. 1998). Further, the Complaint sets forth no well-pleaded facts that would support treating Services and the System as one entity through piercing of their corporate veils, or otherwise. Again, therefore, the Complaint is deficient under Rule 8(a)(2).

"sin" of asserting multiple claims against multiple defendants without specifying which defendant(s) are responsible for which acts or omissions, or which of the defendant(s) the claim is brought against." *Weiland, supra*, at 1323; *see also* Complaint at ¶¶ 153-184 (alleging each of the claims for relief, or at least some part thereof, against "Defendants" en masse).

"The unifying characteristic of all types of shotgun pleadings," and there are others of which the State is not guilty (or at least not overly so), "is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland, supra*, at 1323. The Complaint's generic factual allegations lumping together "ETMC" and PMP cannot and do not globally support all claims for relief against each of these defendants. The defendants are therefore left to sort out for themselves which allegations go to which claims. Worse, since (i) each claim refers to the "Defendants," (ii) Services and the System are treated as "ETMC" throughout the Complaint, and (iii) most of the allegations reference "ETMC" and PMP together, Services and the System are left to guess which claims actually apply to them and why. Again this treatment fails to give fair notice and is insufficient under Rule 8(a)(2). Indeed, it is especially inappropriate in this case because Services and the System had no direct contractual relationship with EMSA, made no representations whatsoever to Oklahoma Medicaid, and received no payments from Oklahoma Medicaid, thereby facially negating most of the Complaint's claims against them. The Court should therefore (i) dismiss the claims against Services and the System, or (ii) order the State to provide a more definite statement of those claims under Rule 12(e). *See, e.g., Copeland v. Axion Mortg. Group. LLC*, 2016 U.S. Dist. LEXIS 106249, *9-*14 (S.D. Miss. Aug. 11, 2016) (dismissing shotgun pleading with leave to amend); *Martinez v. Foster, supra*, at *16 (ordering more definite statement).

**B.      Counts I and V Should be Dismissed as to Services and the System.**

Count I is labeled "Kickbacks" and cites Okla. Stat. tit. 56, § 1005(A)(6), which is part of the MPIA. *See* Complaint, Count I (heading). Count V is labeled "Medicaid Program Integrity Violation" and cites Okla. Stat. tit. 56, §§ 1005(A)(1) and (2), also part of the MPIA. *Id.,* Count V (heading). Counts I and V should be dismissed as to Services and the System.

### 1.      The State Has Failed to Plead a Claim Under § 1005(A)(6) of the MPIA.

Section 1005(A)(6) makes it unlawful for any person to willfully and knowingly "*[s]olicit or accept* a benefit, pecuniary benefit, or kickback in connection with goods or services paid or claimed by a provider to be payable by the Oklahoma Medicaid Program…." Okla. Stat. tit. 56, § 1005(A)(6) (emphasis added). The State first alleges in Count I that the "Defendants solicited or accepted a benefit, pecuniary benefit, or kickback in connection with goods or services claimed by EMSA and paid by…Oklahoma Medicaid…in violation of…§ 1005(A)(6)." Complaint at ¶ 154. With respect to Services, the System, and PMP, this allegation contradicts the allegations of the Complaint as a whole. Specifically, the State asserts that these defendants *offered and paid* kickbacks to EMSA and Williamson, not that they "solicit[ed] or accept[ed]" kickbacks from anyone. Thus, this aspect of Count I is inherently in conflict with the remainder of the Complaint, and fails to give Services and the System notice of the basis for any claim that either "solicit[ed] or accept[ed]" kickbacks. This is not sufficient under Rule 8(a).

The Complaint then alleges that the "Defendants *offered or accepted* kickbacks…which resulted in the submission of false or fraudulent claims…." *Id.* (emphasis added). This statement is consistent with the allegations of the Complaint as a whole--in that it alleges both sides of a kickback coin--but it does not identify conduct by Services or the System that is proscribed by § 1005(A)(6). Again, § 1005(A)(6) expressly speaks only to "solicit[ing] or accept[ing]" alleged

kickbacks, and is silent as to offering or making prohibited payments. As a result, this aspect of Count I states no claim for relief against Services or the System because the conduct with which they are charged is not proscribed by § 1005(A)(6). Thus, any claim in Count I based on offers or payments of kickbacks should be dismissed under Rule 12(b)(6).

Finally, the Complaint asserts that the "false or fraudulent claims made or caused by Defendants," *id.* at ¶ 155, were paid by Oklahoma "to its detriment." *Id.* at ¶ 156. Thus, Count I concludes, the "Defendants" are liable to the State pursuant to § 1005(A)(6), and owe damages "as provided for in Okla. Stat. tit. 56 § 1007…." *Id.* For at least three reasons, this claim makes no sense with respect to Services and the System. *First*, as explained above, § 1005(A)(6) is facially inapplicable to these defendants. Thus, Services and the System are not, and cannot be, "liable to the State…pursuant to…§ 1005(A)(6)." *Second*, § 1005(A)(6) does not proscribe the submission of false claims, and even if it did, the Complaint does not--and cannot--allege that Services or the System submitted any such claim. Again, therefore, Count I states no claim against these defendants. *Third*, the penalties imposed by § 1007 attach only to a "person who receives payment for furnishing goods or services under the Oklahoma Medicaid Program…." Okla. Stat. tit. 56 § 1007(A), (B)(1). Neither Services, nor the System, received any payment from Oklahoma Medicaid, and the Complaint does not allege otherwise. Indeed, the State's allegation is that EMSA (not Oklahoma Medicaid) paid PMP (not Services or the System) for services rendered under a private contract. Accordingly, neither Services nor the System can be liable for the penalties imposed by § 1007.  Count I should therefore be dismissed.

## 2.    *The State Has Failed to Plead a Claim Under §§ 1005(A)(1) and (A)(2).*

Section 1005(A)(1) makes it unlawful for any person to willfully and knowingly "[m]ake or *cause to be made* a claim, knowing the claim to be false, in whole or in part, by commission

or omission….” Okla. Stat. tit. 56, § 1005(A)(1) (emphasis added). Section 1005(A)(2) makes it unlawful for any person to willfully and knowingly “[m]ake or cause to be *made a statement or representation for use in obtaining or seeking to obtain authorization to* provide a good or a service knowing the statement or representation to be false, in whole or in part, by commission or omission….” Okla. Stat. tit. 56, § 1005(A)(2) (emphasis added). The State does not--and cannot--allege that either Services or the System made any claim to Oklahoma Medicaid. Likewise, it does not--and cannot--allege that either Services or the System made any “statement or representation for use in obtaining or seeking authorization to provide a good or service….” Thus, liability under §§ 1005(A)(1) or (A)(2) can attach to Services and the System only if they *caused* false claims or false statements to be made by others. As a matter of law, neither Services nor the System could have “caused” any false claim or statement to be made.

“For purposes of…[§ 1005], a person shall be deemed to have made or caused to be made a claim, statement, or representation” only if the person (i) “[h]ad the authority or responsibility to make the claim, statement, or representation, to supervise those who made the claim, statement, or representation, or to authorize the making of the claim, statement, or representation, whether by operation of law, business or professional practice, or office procedure[,]” *and* (ii) “[e]xercised such authority or responsibility or failed to exercise such authority or responsibility and as a direct or indirect result, the false statement was made.” Okla. Stat. tit. 56, § 1005(B). The Complaint does not--and cannot--allege that either Services or the System had and exercised any authority or responsibility for any claim, statement, or representation made to Oklahoma Medicaid (or anyone else) by EMSA. Hence, the requisite circumstances in which an entity may be said to have “caused” false claims or statements do not exist with respect to Services and the System. Accordingly, Services and the System did not violate §§ 1005(A)(1) or (A)(2), and are

not (and cannot be) liable to the State under § 1007. Count V should therefore be dismissed as to Services and the System as a matter of law.

### 3.      The State's MPIA Claim Also Fails Because the State Has Not Alleged a Violation of the AKS.

Finally, "[t]he provisions of…[§ 1005] shall not be construed to prohibit any payment, business arrangement or payment practice not prohibited by…[the AKS]." Okla. Stat. tit. 56 § 1005(C). In other words, if the arrangement between EMSA and PMP was not prohibited under the AKS, then it also was not prohibited under § 1005. Thus, even assuming the State could otherwise allege a claim against Services or the System under the MPIA, its claim would also fail because, as explained below, the State has not alleged a violation of the AKS.

## C.      State Has Failed to Plead a Violation of the AKS.

In their motions to dismiss, PMP, Services, and the System have explained at length why the United States and the State (which make essentially the same allegations) have failed to plead a violation of the AKS.  For the Court's convenience, the arguments on this point made by Services and the System are reproduced (paraphrase and in part) below.

### 1.      The Complaint Fails to Satisfy the Requirements of Rule 9(b).

As relevant to Services and the System, the AKS forbids "knowingly and willfully offer[ing] or pay[ing] any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person…to purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program…." 42 U.S.C. § 1320a-7b(b)(2)(B).  Because they are brought as the basis for the State's OFCA claims, the elements of the alleged AKS violations must be pleaded with

particularity under Rule 9(b). *U.S. ex rel. Nunnally v. West Calcasieu Cameron Hospital*, 519 Fed. App'x 890, 894 (5th Cir. 2013).

Rather than plead its claims against each defendant with particularity, the State attributes various payments and other acts to "ETMC" and PMP together. For instance, the State repeatedly alleges that "ETMC and Paramedics Plus" made various payments to or on behalf of EMSA. *See*, *e.g.,* Complaint at ¶¶ 3, 60-63, 65, 67-71, 73-75, 79-81, 83, 86, 95-96, 104, 106-07, 137. But the State's Complaint fails to show how Services, the System and PMP *collectively* made any such payments and, as a practical matter, it is completely implausible that these three separate juridical entities made any of the alleged payments together or as a group. Similarly, the Complaint also alleges – again without sufficient factual support – that various payments were "designed to induce Williamson and EMSA to contract with ETMC *and* Paramedics Plus." Complaint at ¶¶ 77, 87 (emphasis added).   However, the Complaint only references contracts between PMP and EMSA.  Complaint at ¶ 56.

If the State truly intends to allege that Services and the System participated in a "kickback scheme" in violation of the AKS, then it must plead the elements of the purported violation as to each entity with the particularity required by Rule 9(b). The State's Complaint manifestly fails to do so, and should be dismissed as a result.

### 2.    *The Complaint Fails to Plead a Plausible Violation of the AKS.*

As explained in PMP's Motions to Dismiss, the State's allegations of a "kickback" scheme between PMP and EMSA that purportedly dates back to 1998 is implausible.  Moreover, the State fails to allege a plausible connection between (i) any of the alleged payments, political contributions, or gifts described in its Complaint, and (ii) any particular patient referral, service

referral, or contract. And this is all the more so as to Services and the System, which neither entered into any contract with, nor provided any service whatsoever to, EMSA.

### 3. The Complaint Alleges No Intent by Services or the System to Violate the Law.

"[I]n order to violate the AKS, it is not enough to covet the business of another, there must actually be some bad intent to violate the law." *U.S. ex rel. Jamison v. McKesson Corp.*, 900 F. Supp. 2d 683, 699 (N.D. Miss. 2012) (citing *United States v. Davis*, 132 F. 3d 1092, 1094 (5th Cir. 1998)). As applicable to the allegations against Services and the System, the AKS targets transfers intended to induce the purchase of services for which payment may be made by a program such as Medicare or Medicaid. *See* 42 U.S.C. § 1320a-7(b)(1)(B). The State alleges that EMSA received payments from Medicare and Medicaid, and that it could not have billed Medicare and Medicaid for ambulance services "without the services provided by…[PMP] personnel." Complaint at ¶ 144. While this may be true, it does not follow that PMP--let alone Services or the System--intended to violate the AKS (or any law).

The State's theory that the System and Services intended to induce EMSA into referring Medicaid patients or services to PMP is implausible, given that EMSA's contract was with PMP (not the System or Services) and that neither the System nor Services received any direct benefit from EMSA, let alone from Medicare or Medicaid.  As the Complaint acknowledges, PMP performed services for EMSA, and EMSA was contractually responsible for paying PMP for those services. PMP was entitled to be paid whether or not EMSA was able to obtain collections from other sources.  PMP, then, did not look to Oklahoma Medicaid – or anyone other than EMSA – as the source of any payment for the services it provided. These facts necessarily belie any intent to violate the AKS (or any other law) on the part of Services and the System.

**D.      Counts II, III, and IV Should be Dismissed as to Services and the System.**

Counts II, III, and IV assert causes of action under the OFCA. For two reasons, these claims should be dismissed as to Services and the System. *First*, the kickback arrangement alleged by the State began prior to the November 1, 2007 effective date of the OFCA.[5] Because the statute is not retroactive, all claims based on conduct occurring prior to November 1, 2007 should be dismissed. *Second*, for the same reasons that the United States has alleged no viable claim against Services or the System for violating the FCA, the State has alleged no viable claim against them for violating the OFCA. Accordingly, these claims should be dismissed.

### *1.      The OFCA Does Not Apply to Alleged Misconduct Before 2007.*

In *U.S. ex rel. King v. Solvay, S.A.*, the court construed the applicability of the OFCA to conduct occurring before the statute's November 1, 2007 effective date. *Solvay*, 23 F. Supp. 2d 472, 529-30 (S.D. Tex. 2011), *vacated in part on other grounds on reconsideration*, 2012 U.S. Dist. LEXIS 42482 (S.D. Tex. March 28, 2012). Retroactivity of a state statute is a function of state law. Under Oklahoma law, "'[a]bsent a plain legislative intent to the contrary, statutes are generally presumed to operate prospectively only.'" *Id.* at 529-30 (quoting *Cole v. Silverado Foods, Inc.,* 78 P. 3d 542, 546 (Okla. 2003)). Finding that "[t]here is no plain legislative intent that the…[OFCA] should apply retroactively, and…[the statute] does not affect only a mode of procedure as it creates a substantive cause of action," the court held that "there is no reason to apply the…[OFCA] retroactively. *Id.* at 530.

As in this case, the sections of the OFCA at issue in *Solvay* imposed civil penalties on any person who (i) knowingly presents, or causes to be presented, to the State of Oklahoma a false or fraudulent claim for payment, (ii) knowingly makes, uses, or causes to be made or used,

---

[5] The OFCA was approved May 14, 2007 and became effective November 1, 2007. *See* 2007 Okla. Sess. Law Serv. Ch. 137 (S.B. 889) (West).

a false record or statement to get a false or fraudulent claim paid, or (iii) conspires to defraud the State by getting a false or fraudulent claim paid. *Id.* at 530-31 (quoting Okla. State. Tit. 63 § 5053.1).[6] Because it held that the OFCA is not retroactive, the court noted that it "applies only to alleged false or fraudulent claims for payment…made to the State of Oklahoma, false records or statements to get a false or fraudulent claim paid…by the State of Oklahoma, or conspiracies to defraud the State of Oklahoma that occurred on or after November 1, 2007." *Id.* at 531. As a result, all "claims under the…[OFCA] as they pertain to alleged claims, records, or conspiracies occurring before November 1, 2007" were dismissed with prejudice. *Id.*[7]

In *Solvay*, the court dismissed all "claims under the…[OFCA] as they pertain to alleged claims, records, or *conspiracies* occurring before November 1, 2007…." *Solvay*, *supra,* at 531 (emphasis added). Here, the State alleges a single conspiracy and kickback scheme "beginning in 1998 and ending in 2013…." *See, e.g.,* Complaint at ¶¶ 3, 7-15, 53-59. Under these circumstances, the Court should dismiss the State's OFCA claims in their entirety. Alternatively, it should dismiss all claims with respect to any conduct occurring before November 1, 2007.

### 2.      *The State has failed to state a cause of action under the OFCA.*

The State alleges that the OFCA "largely mirrors the…[FCA]…." Complaint at ¶ 48. This is not untrue, but with an important twist omitted by the State. The relevant provisions of the OFCA track the provisions of the FCA not as they presently read, but as they read *in 2007*.

---

[6] The description of the OFCA set forth above paraphrases *Solvay's* quotation of the statute. The State's description of the relevant portions of the OFCA is verbatim. *See* Complaint at ¶ 49.

[7] At least three cases have followed the result in *Solvay* and held that the OFCA does not apply retroactively. *See U.S. ex rel. Boise v. Cephalon, Inc.,* 2015 U.S. Dist. LEXIS 49341, at *40 (E.D. Pa. April 15, 2015) (OFCA does not apply retroactively because there is no plain legislative intent contrary to the presumption of prospective application); *U.S. ex rel. Ruscher v. Omnicare, Inc.,* 2014 U.S. Dist. LEXIS 79885, *94-*96 (S.D. Tex. June 12, 2014) (agreeing with *Solvay's* reasoning), *aff'd,* 663 Fed. Appx. 368 (5th Cir. 2016); *U.S. ex rel. Streck v. Allergen, Inc.,* 894 F. Supp. 2d 584, 605 (E.D. Pa. 2012) (noting that the relator agreed that the OFCA does not apply retroactively).

*See* former 31 U.S.C. § 3729(a)(1)-(3).[8] Oklahoma case law provides little, if any, guidance regarding the substantive provisions of the OFCA. There is, however, a body of federal case law interpreting and applying the FCA as it existed in 2007. As is common in such situations, the Court should look to that case law for guidance in interpreting and applying the OFCA. Under that authority, the Complaint states no claim against Services or the System for violating the OFCA. Thus, for the reasons that follow, Counts II, III, and IV should be dismissed.

### a.      The Complaint States No Claim Under § 5053.1(B)(1).

Count II alleges violations of § 5053.1(B)(1), which is substantively equivalent to former FCA § 3729(a)(1). This provision included "an express presentment requirement." *Grubbs, supra,* at 188. "Other elements include[d] that the claim was false or fraudulent and that the action was undertaken knowingly." *Id.* Thus, to state a claim under former § 3729(a)(1)--and therefore § 5053.1(B)(1)--the Complaint must allege (i) a false statement or fraudulent course of conduct, (ii) made or carried out with the requisite scienter, (iii) that was material, and (iv)  that was presented to the State. *U.S. ex rel. Steury v. Cardinal Health, Inc.,* 625 F. 3d 262, 267 (5th Cir. 2010). More succinctly, "[a] claim under the FCA requires presentation of a knowingly false claim to the government for payment; *i.e.*, the requirements are a knowing conduct, falsity, and materiality." *U.S. ex rel. Steury v. Cardinal Health, Inc.*, 735 F. 3d 202, 205 (5th Cir. 2013) ("*Steury II*"). The Complaint states no claim against Services or the System for violating § 5053.1(B)(1), and Count II should be dismissed under Rule 12(b)(6).

(i)      As noted above, the FCA--and therefore the OFCA--attaches liability not to

---

[8] Prior to amendment effective May 20, 2009, the relevant portions of the FCA imposed liability on any person who (i)" knowingly presents, or causes to be presented, to an officer or employee of the United States Government…a false or fraudulent claim for payment or approval;" (ii) "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government;" or (iii) "conspires to defraud the Government by getting a false or fraudulent claim allowed or paid…." Other than substituting state references as appropriate, the OFC mirrors the FCA as it existed on November 1, 2007.

underlying fraudulent activity or even the wrongful payment of a claim, but to the filing of false claims for payment. The first question in FCA cases therefore is whether a false or fraudulent claim seeking payment was actually filed or presented. Indeed, § 3729(a)(1)'s "*sine qua non is the presentment of a false claim.*" *Kanneganti, supra*, at 188. Likewise, the same is true with respect to § 5053.1(B)(1). The Complaint alleges that *EMSA* filed false claims with the State, and identifies a smattering of examples. *See* Complaint at ¶¶ 147-150, 158-159. But it identifies *no* false or fraudulent claim presented to Oklahoma Medicaid by Services or the System, and does not allege even the existence of such claims. As a result, the Complaint facially states no claim against Services or the System for actually presenting a false claim to the State.

(ii)     The Complaint also does not allege that the System or Services "caused" EMSA to present false claims. Rather, it alleges that the "*Defendants* presented or caused to be presented false or fraudulent claims for payment…in violation of the…[OFCA]…." Complaint at ¶ 159 (emphasis added). As noted above, alleging that "Defendants" collectively violated the law runs afoul of Rules 8(a) and 9(b). Thus, just as the Complaint of the United States fails to meet Rule 9(b)'s requirements with respect to the allegations that Services and the System violated the AKS and the FCA, the State's Complaint fails to satisfy Rule 9(b) with respect to its claims the Services and the System violated the OFCA.

Specifically, the State's abject failure to comply with Rule 9(b) with respect to causation is fatal to its OFCA claims against Services and the System.  The Complaint alleges no facts that would support a finding that Services or the System proximately caused EMSA (or anyone else) to file false claims with Oklahoma Medicaid. As the Supreme Court recently reminded, the focus of the FCA "remains on those who *present or directly induce the submission of false or fraudulent claims.*" *Universal Health Servs. v. U.S. ex rel. Escobar*, __ U.S. __, 136 S. Ct. 1989,

1996 (2016) (emphasis added). No less is true for the OFCA. Thus, to state a claim against Services and the System for "causing" the filing of false claims by EMSA, the State must, at a minimum, articulate how Services and the System "directly induce[d]" the submission of those false claims. Indeed, "[n]umerous courts have held that some level of *direct* involvement in causing the submission of false claims…is necessary for direct liability under the FCA." *U.S. ex rel. Polansky v. Exec. Health Res., Inc*., 2016 U.S. Dist. LEXIS 102113, *91 (E.D. Pa. May 10, 2016) (emphasis added). The same requirement should apply to the OFCA.

Since PMP was a subsidiary of Services (and since Services was, in turn, a subsidiary of the System), Services and the System cannot be directly liable to the State for causing the filing of allegedly false claims *absent participation in the actual claims process*: "merely '[b]eing a parent corporation of a subsidiary that commits a FCA violation, without some degree of participation by the parent in the claims process, is not enough to support a claim against the parent for the subsidiary's FCA violation.'" *U.S. ex rel. Hockett v. Columbia/HCA Healthcare Corp.*, 498 F. Supp. 2d 59-60 (D.D.C. 2007) (quoting *U.S. ex rel. Tillson v. Lockheed Martin Corp.*, 2004 U.S. Dist. LEXIS 22246, *107 (W.D. Ky. 2004)). Again, the same requirement should apply to the OFCA. But the Complaint sets forth *no* facts showing direct (or any) involvement by Services or the System in EMSA's claims-filing process. Nor could it: Services and the System were not involved in EMSA's collection activities--including its claims for reimbursement to Medicare and Medicaid--in any way.[9] Accordingly, if (and to the extent that) the State alleges claims against Services or the System for direct violations of § 5053.1(B)(1), then those claims should be dismissed under Rule 12(b)(6). *See also U.S. ex rel. Schaengold v.*

---

[9] In addition, as explained in *Polansky*, *supra*, allegations that a parent corporation benefits financially from its subsidiary or has "overlapping employees, managers or officers" is insufficient to show that the parent is directly liable under the FCA. *Polansky*, *supra*, at *94-*95.

*Mem'l Health, Inc.*, 2014 U.S. Dist. LEXIS 169555, *31-*33 (S.D. Ga. Dec. 8, 2014) (holding Government's allegations insufficient to state a claim against parent and other subsidiaries).

(iii)    Likewise, the Complaint fails to show that Services and the System are liable under a veil-piercing theory. While Count II facially asserts only direct liability (Complaint at ¶¶ 157-161), it incorporates an earlier paragraph, which alleges that "ETMC" is jointly and severally liable for PMP's actions because PMP and "ETMC" are "affiliated entities governed and controlled by the same individuals and whose operations are inextricably intertwined." *Id.* at ¶ 24. "Specifically," the Complaint continues, "these Defendants share common management, finances, control, and supervision," and "acted in concert to facilitate and cause the submission of false claims to the…[State]." *Id.*  By these conclusory allegations, the Complaint seeks to hold "ETMC" liable for PMP's conduct. These allegations parrot the veil-piercing allegations made by the United States.

In *U.S. ex rel. DeKort v. Integrated Coast Guard Sys.*, 705 F. Supp. 2d 519 (N.D. Tex. 2010), the court observed that, "[a]lthough not yet addressed by the Fifth Circuit, other…[courts] have held that federal common law (rather than the law of the state where a corporation is incorporated), governs the veil-piercing question in a FCA case." 705 F. Supp. 2d at 546.[10] The rationale for applying federal common law in this context is that the Supreme Court "ha[s] consistently held that federal law governs questions involving the rights of the United States arising under nationwide federal programs." *United States v. Kimbell Foods*, 440 U.S. 715, 726

---

[10] *See, e.g., U.S. ex rel. Davis v. Prince*, No. 1:08cv1244, 2011 U.S. Dist. LEXIS 77152, at * 8 (E.D. Va. June 23, 2011) ("In FCA suits, "federal law governs the veil-piercing question."), *citing U.S. ex rel. Kneepkins v. Gambro Healthcare, Inc.*, 115 F. Supp. 2d 35, 39 (D. Mass. 2000) ("The Medicare program and…[FCA] provide the basis for the government's claims; federal law, therefore, controls the veil-piercing question."). *See also, e.g., U.S. ex rel. Powell v. Am. Intercontinental Univ., Inc.*. No. 1:08-CV-2277, 2016 U.S. Dist. LEXIS 127598, at * 23 (S.D. Ga. September 20, 2016) ("Because this is an FCA case, federal law controls the veil piercing question."), *citing U.S. ex rel. Hockett v. Columbia/HCA Healthcare Corp., supra,* at 60.

(1979). The federal public health insurance regimes are such programs, as is the FCA. Hence, in cases such as this, common law claims, including veil-piercing, are governed by federal common law. The federal health care program relevant to the FCA violations alleged by the United States is Medicare. According to the State, Oklahoma Medicaid is also a federal health care program partially funded by the United States. *See* Complaint at ¶¶ 31-32. Thus, federal common law applies and, under that law, the Complaint is insufficient to state a claim for derivative liability. But even if state law applies to the issue, the result is the same under governing Texas law.

For example, in *U.S. ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys.*, 1999 U.S. Dist. LEXIS 23319 (S.D. Tex. July 20, 1999), *adopted*, 1999 U.S. Dist. LEXIS 23318 (S.D. Tex. Sept. 14, 1999), the relator sued the System and several of its subsidiaries under the FCA based on allegations that one of its subsidiaries, University Park Hospital ("UPH"), allegedly submitted false claims. As here, the relator argued that the court should pierce the corporate veil to hold the System (and certain of its subsidiaries) liable for the actions of the subsidiary. *See* 1999 U.S. Dist. LEXIS 23319 at *2-*6. Also as here, the relator conflated the System and certain subsidiaries into an amalgam ("East Texas") broadly identified as UPH's "parent." *Id.* at *6. In seeking to hold "East Texas" liable for UHP's alleged FCA violations, relator claimed that "East Texas…controlled [UPH's] operations, so that the 'illegal Medicare schemes were designed, promoted, and implemented by the East Texas defendants.'" *Id.*  "From these allegations, [the relator sought]…a 'piercing of the corporate veil,' and a finding that East Texas violated the FCA because of actions taken by UPH.'" *Id.*

Observing that the relator claimed "in only the broadest and most conclusory terms that UPH was under the 'direction' and 'control' of its parent, East Texas," the court held that relator's pleadings were "clearly insufficient" under Rule 9(b). *Id.* at *12. Indeed, the court noted

that it could not adequately evaluate the 12(b)(6) motion until the relator clarified, among other things, "her allegations regarding the corporate structure of East Texas and UPH…." *Id.* at *13. It therefore ordered her to amend her complaint to state "the basis of her conclusory statements as to the relationship between" East Texas and UPH.[11] No less should be required here. The Complaint's allegations concerning liability for "ETMC" are just as conclusory, uninformative, and insubstantial as those in *Reagan*. This treatment does not satisfy Rules 8(a) and 9(b), and the Court should therefore reject the Government's veil-piercing allegations.

*Schaengold, supra*, is also instructive. In that case, the court applied a more substantive analysis in dismissing the United State's veil-piercing claims, observing that "merely being a parent, or an associated corporation, of a subsidiary that commits an FCA violation is insufficient to support an FCA action against the parent or the associated corporation." 2014 U.S. Dist. LEXIS 169555 at *27. "Rather, the Government must demonstrate that the parent and the associated corporations are 'liable under a veil piercing or alter ego theory, or that [they are] directly liable for [their] own role in the submission of false claims.'" *Id.* (quoting *Hockett, supra*, at 60). With respect to veil-piercing, the court noted first that, "[i]n general, federal courts accord separate corporate entities great deference and will disregard the corporate form only in limited circumstances 'when the incentive value of limited liability is outweighed by the competing value of basic fairness to parties dealing with the corporation.'" *Id.* at *7-*28 (quoting *Labadie Coal Co. v. Black,* 672 F. 2d 92, 96 (D.D.C. 1982)). In assessing the Complaint, the Court should accord the same strong deference to Service's and the System's corporate forms and dismiss the State's allegations of joint and several liability.

---

[11] The court's evaluation of the relator's pleadings addressed in one fell swoop the several defects in her allegations. *See* 1999 U.S. LEXIS 23319 at *11-13. We have excerpted from the opinion the statements relevant to the relator's attempt to pierce the corporate veil. The point is that, along with other allegations, the veil-piercing allegations were insufficient under Rule 9(b).

As explained in *Schaengold*, "[t]he question whether to disregard the corporate form can be expressed as a two-step inquiry." *Id.* at *28. Under this test, "the Government's veil-piercing claims can survive...[the instant] motion to dismiss only if…[the Complaint] alleges facts sufficient to show that (1) there was such unity of interest between…[Services and/or the System and PMP] that…[PMP] had no 'legal or independent significance of…[its] own, and (2) that the corporate form was used to perpetrate some form of injustice or fraud.'" *Schaengold*, *supra*, at *28 (citation omitted). The State has not alleged sufficient facts showing either element. The Complaint does not allege any facts demonstrating that PMP's separate corporate personality did not exist--such as, for example, failure to maintain corporate formalities, undercapitalization, or lack of corporate records. Likewise, it is "devoid of any factual averments tending to show that any injustice would result if the misconduct giving rise to the alleged…[OFCA] violations is treated as…[PMP's] alone." *Schaengold, supra*, at *31. Hence, "a veil-piercing theory cannot support the…[State's]…[OFCA] claims against…[Services and the System]," and its veil-piercing claims should be dismissed.[12]

(iv)     In its separate Motion to Dismiss, PMP sets forth further reasons why the Complaint states no claim for violations of § 5053.1(B)(1). Services and the System agree with and adopt PMP's arguments, and incorporate them by reference as if set forth herein.

---

[12] In *Polansky*, the court considered the first federal requirement for veil-piercing using an eight- factor test suggested by circuit precedent. The Government failed that test--and therefore the first requirement-- as well as federal veil-piercing's second requirement. *See Polansky, supra*, at * 98-104. In *DeKort*, Judge O'Connor used a 12-factor test suggested by Fifth Circuit precedent in holding that the relator's veil-piercing allegations survived the defendants' motion to dismiss. *See DeKort, supra*, at 546-47. The Complaint's minimalist veil-piercing allegations are not comparable to the allegations in *DeKort* and, in fact, are on a par with those in *Reagan*. Thus, the Court should find Complaint's allegations insufficient under any iteration of the federal veil-piercing test. Alternatively, it should reach the same result if the issue is governed by state law. Texas is the state of incorporation of both Services and the System. Under Texas law, veil-piercing in this context is governed by Tex. Bus. Orgs. Code Ann. § 21.223. As with federal common law, the State alleges no facts that would support veil-piercing under § 21.223.

### b.  The Complaint States No Claim Under § 5053.1(B)(2).

Count III alleges violations of § 5053.1(B)(2), which is substantively equivalent to former FCA § 3729(a)(2). To adequately plead a claim under subsection (B)(2), the State must allege that (i) the defendant made, or caused to be made, a statement in order to receive money from Oklahoma Medicaid, (ii) the statement was false, and (iii) the defendant knew it was false. The Complaint states no claim against Services or the System for violation of this subsection.

The Complaint fails to identify any "false statement or record" made or used by either the System or Services let alone the specifics regarding who made such a statement or when it was made. Indeed, Count II forecloses the possibility of any such "record or statement" by alleging that "[t]he false records or statements…were *EMSA's* false certifications, representations, and omissions…." Complaint at ¶ 163 (emphasis added). Thus, the Complaint not only fails to satisfy Rule 9(b)'s requirements with respect to any alleged violations of § 5053.1(B)(2), but also shows on its face that Services and the System made no "false record or statement [to the State] to get a false or fraudulent claim paid…by the…[State]." Hence, Count III should be dismissed.

The Complaint does allege that "ETMC and Paramedics Plus submitted false claims to EMSA under the ambulance services contract." Complaint at ¶ 145. It does not, however, identify any such "false claims." Nor does it describe when such "false claims" were submitted, who submitted them, or how they were submitted.  Further, it does not explain (i) how such claims were "false," or (ii) how they were made or used to get a false or fraudulent claim by EMSA paid by the State. Moreover, § 5053.1(B)(2) targets "records or statement," not "claims." Thus, it is difficult to see how "claims" made to EMSA implicates § 5053.1(B)(2) at all. In any event, the Complaint's allegations do not satisfy Rule 9(b), and Count III should be dismissed.

Finally, the State fails to allege how Services or the System knowingly "caused" EMSA

to submit the false records or statements identified in paragraph 163. Services and the System had nothing to do with EMSA's certifications, and there is no allegation that they reviewed, approved, or in any way influenced those certifications, or EMSA's Medicaid contracts, in any respect. *See*, *e.g., U.S. ex rel. Bennett v. Medtronic, Inc.*, 747 F. Supp. 2d 745, 781 (S.D. Tex. 2010) ("Because the relators have not alleged that Medtronic caused any hospital or physician to certify compliance with the anti-kickback statute, these allegations are dismissed.").  Hence, the Complaint states no claim against the System or Services under § 5053.1(B)(2)--let alone with the particularity required by Rule 9(b)--and Count III should be dismissed.

### c.        The Complaint States No Claim Under § 5053.1(B)(3).

Count IV alleges violations of § 5053.1(B)(3), which (i) proscribes conspiracy to defraud the State by getting a false claim paid or approve, and (ii) is substantively equivalent to former FCA § 3729(a)(3). A claim for FCA conspiracy requires (i) "the existence of an unlawful agreement between defendants to get a false or fraudulent claim allowed or paid by the government[,]" and (ii) at least one act performed in furtherance of that agreement. *DeKort, supra*, at 548 (citing *U.S. ex rel. Farmer v. City of Houston*, 523 F. 3d 333, 343 (5th Cir. 2008)). The conspiracy allegations must satisfy Rule 9(b) and, specifically, "'plead with particularity the conspiracy as well as the overt acts . . . taken in furtherance of the conspiracy.'" *Id.* (citing *Grubbs*, *supra*, at 193). The same requirements should obtain with respect to OFCA conspiracy.

The Complaint states no claim against Services or the System for conspiracy to violate the OFCA. Count IV's allegation regarding an alleged conspiracy is that "ETMC and…[PMP] knowingly conspired with Williamson and EMSA by offering and paying EMSA kickbacks…." Complaint, at ¶ 167. This is an allegation (deficient to be sure) of conspiracy to violate the AKS, *not* the FCA or OFCA. Count IV therefore fails as a matter of law to state a violation of §

5053.1(B)(3). Moreover, even viewed as an allegation of conspiracy to violate the OFCA, it is even less particular and more paltry than the conspiracy allegations in *DeKort*, which Judge O'Connor dismissed *sua sponte* under Rules 9(b) and 12(b)(6). *See DeKort*, *supra*, at 548. The same result should obtain in this case. The Complaint's conspiracy allegations are, at best, "merely a formulaic recitation of the legal elements of conspiracy." *Id.* Accordingly, Count IV should be dismissed under Rules 9(b) and 12(b)(6).

### D.  Counts VI, VII, and VIII Should Be Dismissed.

The State alleges common law claims for (i) fraud, (ii) civil conspiracy, and (iii) unjust enrichment. *See* Complaint at ¶¶ 174-184. Presumably, the State relies upon Oklahoma common law, and, for purposes of this Motion, Paramedics Plus will address the State's claims under Oklahoma law.  Regardless of whether Oklahoma or federal (or Texas) common law applies, the Complaint's conclusory allegations do not satisfy Rule 8(a) or Rule 9(b).

### 1.  *The State has failed to plead fraud with particularity.*

Under Oklahoma law, the elements of fraud are "(1) that defendant made a material misrepresentation; (2) that it was false; (3) that when he made it he knew it was false or made it recklessly . . .; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; (6) the he thereby suffered injury; and (7) all of the above must be proved with a reasonable degree of certainty." *LeFlore v. Reflections of Tulsa, Inc.*, 708 P.2d 1068, 1076 (Okla. 1985).[13] The Complaint does nothing more than recite various elements of fraud as to all "Defendants." *See* Complaint at ¶¶ 175-76.  The Complaint does not allege any particular damages resulting from fraud, which, as explained above, is fatal to the State's claim. The Complaint also does not identify any misrepresentation made by either Services or the

---

[13] The elements of fraud under federal common law are substantially similar. *Williams v. WMX Techs.*, 112 F.3d 175, 177 (5th Cir. 1997).

System, let alone the time, place and content of any such misrepresentation or the person who made it.  Nor does the Complaint explain how any alleged misrepresentation was material to the State's decision to pay Medicaid claims, or how the State purportedly relied on any such misrepresentation.  Likewise, the Complaint does not allege any facts showing that either Services or the System intended the State to rely on any alleged misrepresentation.  Accordingly, the State's common-law fraud claims should be dismissed.  *See*, *e.g., Iqbal*, 56 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

### 2.     *The State has failed to plead a civil conspiracy.*

In Count VII of the Complaint, the State alleges that "ETMC and Paramedics Plus conspired with Williamson and EMSA by offering or paying kickbacks . . ." and that "Defendants conspired for claims to be submitted, approved, and paid by reason of their conspiracy to violate the [OFCA] . . . ."  Complaint at ¶¶167, 169.   These conclusory allegations fail to state a claim for civil conspiracy under Oklahoma law.

Civil conspiracy is an "intentional tort." *Schovanec v. Archdiocese of Oklahoma City*, 188 P.3d 158, 175 (Okla. 2008).  To state a cause of action for civil conspiracy, the State must allege a "meeting of the minds" on an object or course of action, an intent by the conspirators to do an unlawful act or to do a lawful act by unlawful means, and damages proximately caused by "one or more unlawful, overt acts." *Id.* (quoting Texas case law for the elements of civil conspiracy). Apart from alleging that the Defendants "conspired" with one another, the State fails to describe any actual agreement between the System and/or Services and EMSA (or Williamson), let alone an agreement between Services, the System and EMSA (or Williamson) regarding the payment of kickbacks.  Likewise, the Complaint alleges no facts showing an

agreement between either Services or the System and EMSA (or Williamson) with respect to the submission of false Medicaid claims.  The Complaint's allegation that "Defendants conspired for claims to be submitted, approved and paid" is insufficient.  *See Hitch Enterprises v. Cimarex Energy Co.*, 859 F. Supp. 2d 1249, 1268 (W.D. Okla. 2010) (dismissing civil conspiracy claim based on unsubstantiated allegations of agreements to short-change royalty owners).  Finally, the State has alleged no actual damages in this case, which is a key element of civil conspiracy.  *See Clark v. Sloan*, 37 P.2d 263, 266 (Okla. 1934) ("In a civil action to recover damages for conspiracy, it is essential that the gist of the action be damages and not the conspiracy.").  Accordingly, the State's conspiracy claim should be dismissed.

### 3.    The State is not entitled to relief for "unjust enrichment."

In Count VIII, the State seeks restitution of funds under an unjust enrichment theory.  Complaint at ¶ 184.  Unjust enrichment is an equitable remedy that applies when a "party has money in its hands that, in equity and good conscience, it should not be allowed to retain."  *Harvell v. Goodyear Tire & Rubber Co.*, 164 P.3d 1028, 1035 (Okla. 2006).  Unjust enrichment is not available if the plaintiff has an adequate remedy at law.  *Id.*  The State has alleged causes of action under the OFCA and the MPIA, and the State does not contend that these legal remedies (if the State could plead and prove them) would be inadequate.  Thus, unjust enrichment is not available to the State in this case.  Regardless, the Complaint does not allege any facts showing that either Services or the System actually received any money from Oklahoma Medicaid.  The State also does not dispute that EMSA and Paramedics Plus performed valuable services, nor does the State complain that it paid EMSA more than the services were worth.  Thus, as explained above, the State received the benefit of its bargain, and EMSA received fair compensation for the services rendered.

## V.    REQUEST FOR ORAL HEARING

Pursuant to Local Rule CV-7(g) Defendants request an oral hearing on this motion.

## PRAYER

For the foregoing reasons, East Texas Medical Center Regional Healthcare Services, Inc., and East Texas Medical Center Regional Healthcare System, Inc. respectfully request that the Court dismiss the State's Complaint as to all claims against them with prejudice and requests such other and further relief, at law or in equity, to which they may be entitled.

Date:    April 10, 2017

Respectfully submitted,

By: /s/ Otis Carroll
Otis W. Carroll, Jr.
State Bar No. 03895700
Collin M. Maloney
State Bar No. 00794219
Mandy Nelson
State Bar No. 24055270
IRELAND, CARROLL & KELLEY, P.C.
6101 S. Broadway Ste. 500
Tyler, TX 75703
(903) 561.1600
otiscarroll@icklaw.com
cmaloney@icklaw.com
mnelson@icklaw.com

T. John Ward
State Bar No. 20848000
WARD, SMITH, & Hill PLLC
1127 Judson Road, Suite 220
Longview, TX 75601
(903) 757.6400
tjw@wsfirm.com

Michael C. Coker
ADAMS & COKER, P.C.
State Bar. No. 04527100
4540 Kinsey Drive
Tyler, TX 75703

(903) 581.1196
mikecoker@adams-coker.com

Scott E. Stevens
State Bar No. 00792024
David P. Henry
State Bar No. 24027015
STEVENS | HENRY
P.O. Box 3427
Longview, Texas 75606
Telephone: (903) 7536760
Fax: (903) 753-6761
scott@stevenshenry.com
david@stevenshenry.com

Kyle J. Nelson
State Bar No. 24056031
NELSON LAW FIRM
5380 Old Bullard Rd., Ste 600-187
Tyler, Texas 75703
(903) 561-8449
kyle@knelsonlaw.com

## <u>CERTIFICATE OF SERVICE</u>

By my signature below, I do hereby certify that on April 10, 2017, a true and correct copy of the foregoing Motion was filed using the Court's electronic filing system, which will provide notice to all parties of record.


By:     * /s/ Otis W. Carroll  *
              Otis W. Carroll