# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>CALIFORNIA STATE OF, EX REL.,<br>FLORIDA STATE OF, EX REL.,<br>OKLAHOMA STATE OF, EX REL., and<br>STEPHEN DEAN, RELATOR<br><br>v.<br><br>PARAMEDICS PLUS LLC, EMERGENCY<br>MEDICAL SERVICES AUTHORITY,<br>EAST TEXAS MEDICAL CENTER<br>REGIONAL HEALTHCARE SYSTEM<br>INC, HERBERT STEPHEN WILLIAMSON,<br>and EAST TEXAS MEDICAL CENTER<br>REGIONAL HEALTH SERVICES INC | § § § § § § § § § § § § § § § § | Civil Action No. 4:14-CV-00203<br>Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Paramedics Plus, LLC's ("Paramedics Plus") Motion to Compel the United States of America ("the Government") to Comply with Discovery (Dkt. #131). The Court, having considered the motions and the relevant pleadings, finds that the motion to compel should be granted in part.

## BACKGROUND

Emergency Medical Services Authority ("EMSA") owns ambulances but does not employ drivers, emergency medical technicians, paramedics, or other personnel that perform health care services. EMSA contracts with private companies to provide these services. EMSA contracted with Paramedics Plus to provide ambulance services and as part of the agreement would pay

EMSA any profits over twelve percent ("profit cap").[1] This profit cap was allegedly not disclosed to EMSA's board of directors and the profit cap was not reduced to writing. To receive Medicare and Medicaid payments, EMSA certified compliance with the Anti-Kickback Statute ("AKS"). The Government maintains that the profit cap was in violation of the AKS, and by falsely certifying compliance with the AKS, Defendants in this case[2] violated the False Claims Act ("FCA").

On April 4, 2014, relator Stephen Dean filed a complaint against Paramedics Plus, EMSA, East Texas Medical Center Regional Healthcare System, Inc., Pinellas County Emergency Medical Services Authority ("Pinellas County") and County of Alameda, California ("Alameda County") (Dkt. #1) alleging, among other things, a violation of the FCA. On January 6, 2017, the Government partially intervened removing Pinellas County and Alameda County as defendants (Dkt. #25). The Government filed its Complaint in Partial Intervention on January 23, 2017 (Dkt. #28).

As part of the litigation and discovery process, on June 30, 2017, Paramedics Plus served Interrogatories and Requests for Admission (the "Interrogatories") on the Government. The Government served its objections and responses (the "Responses") to the Interrogatories on July 27, 2017. The Interrogatories and Responses state:

> 10. State the: (i) total number of Medicare and Medicaid claims, (ii) the total dollar amount paid for such claims and (iii) dates of payments for all such claims submitted by or on behalf of EMSA for which You paid or authorized payment after You first learned of the profit-cap agreement between AMR and EMSA.
> **RESPONSE:** The United States objects to this interrogatory as it seeks information outside the scope of Federal Rule of Civil Procedure 26. The information sought concerns a different ambulance contractor not a party to the United States' claims,

---

[1] The parties disagree about the terminology used to describe the arrangement in place here. For simplicity's sake, the Court will use the term profit cap because that is the term used in the discovery requests, but the Court is in no way making a finding on the events that took place.
[2] Defendants in this case are EMSA, Paramedics Plus, East Texas Medical Center Regional Healthcare Services, Inc., East Texas Medical Center Regional Healthcare System, Inc., and Herbert Stephen Williamson ("Williamson"). Paramedics Plus is the only defendant that filed the present motion.

an ambulance contract not at issue in this action, and a time period that is not relevant to the false claims alleged in this case.

11. State the: (i) total number of Medicare and Medicaid claims, (ii) the total dollar amount paid for such claims and (iii) dates of payments for all such claims submitted by or on behalf of Pinellas County for which You paid or authorized payment after You first learned of the profit-cap agreement between PMP and Pinellas County.

**RESPONSE:** The United States objects to this interrogatory as it seeks information outside the scope of Federal Rule of Civil Procedure 26. The information sought concerns conduct not at issue in this action from a municipal entity not located in Oklahoma and during a time period that is not relevant to the false claims alleged in this case.

12. State the: (i) total number of Medicare and Medicaid claims, (ii) the total dollar amount paid for such claims and (iii) dates of payments for all such claims submitted by or on behalf of Alameda County for which You paid or authorized payment after You first learned of the profit-cap agreement between PMP and Alameda County.

**RESPONSE:** The United States objects to this interrogatory as it seeks information outside the scope of Federal Rule of Civil Procedure 26. The information sought concerns conduct not at issue in this action from a municipal entity not located in Oklahoma and during a time period that is not relevant to the false claims alleged in this case.

14. Identify and describe any instance in which You denied a Medicare or Medicaid claim for reimbursement because the medical provider had entered into a profit-cap agreement with a third-party contractor.

**RESPONSE:** The United States objects to this interrogatory because it is misleading. First, Paramedics Plus appears to have created the term "profit-cap" for purposes of ambulance services contracts. To the extent sharing profit is remuneration, then a "profit-cap" as created by Paramedics Plus satisfies the remuneration element of the Anti-Kickback Statute. Second, as the United States explains in its Complaint in Partial Intervention (Dkt. #28), Defendants' conduct (*i.e.*, the knowing offer and exchange of remuneration with an unlawful purpose, regardless of what Defendants called the arrangement) in this action violated the Anti-Kickback Statute ("AKS"). The AKS does not enumerate the many ways persons may exchange, or offer to exchange, remuneration.

The United States further objects to this interrogatory to the extent it seeks information outside the scope of Federal Rule of Civil Procedure 26. This information sought relates to conduct not at issue in this action regarding municipal entities in various states other than Oklahoma and during a time period that is not relevant to the false claims alleged in this case. The United States has denied reimbursement for claims tainted by potential AKS violations resulting from profit-cap arrangements. For example, the United States settled with Pinellas EMSA in this action alleging Pinellas EMSA violated the AKS when it accepted Paramedics Plus's offer of entering into a profit-cap agreement and then accepting

money under that arrangement. Under the terms of that settlement agreement, Pinellas EMSA not only paid a settlement amount to the United States, but Pinellas EMSA also agreed not to submit certain claims that were tainted by potential AKS violations arising from the acceptance of profit-sharing/profit-capping terms and money offered by Paramedics Plus. Because AKS compliance is a prerequisite to Medicare and Medicaid reimbursement, the United States through its settlement agreement with Pinellas EMSA, denied payment—or even submission—of claims tainted by potential AKS violations arising from the receipt of remuneration in the form of a profit cap as well as money that was transmitted under the applicable profit cap offered by Paramedics Plus. Pinellas EMSA represented that the settlement prohibited the submission or payment of hundreds of thousands, if not millions, of dollars in Medicare and Medicaid claims. Alameda County agreed to similar settlement provisions.

(Dkt. #131, Exhibit A at pp.15–18).

Based on these objections and the parties' inability to resolve the discovery dispute, the Court held a telephone conference on November 14, 2017. At the conference, the Court ordered briefing on the issue. On November 15, 2017, Paramedics Plus filed its motion to compel (Dkt. #131). On November 22, 2017, the Government filed its response (Dkt. #132). Paramedics Plus filed its reply on November 28, 2017 (Dkt. #133), and the Government filed its sur-reply on November 30, 2017 (Dkt. #134).

## APPLICABLE LAW

Under Federal Rule of Civil Procedure 26(b)(1), parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . ." FED. R. CIV. P. 26(b)(1). Relevance, for the purposes of Rule 26(b)(1), is when the request is reasonably calculated to lead to the discovery of admissible evidence. *Id.*; *Crosby v. La. Health & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011). Further, the Court's scheduling order requires that the parties produce documents, as part of its initial disclosure, "documents containing, information 'relevant to the claim or defense of any party.'" (Dkt. #115 at p. 3). The Local Rules of the Eastern District of Texas provide further guidance suggesting that information is "relevant to any party's

claim or defense: (1) it includes information that would support the disclosing parties' contentions; . . . (4) it is information that deserves to be considered in the preparation, evaluation or trial of a claim or defense. . . ." LOCAL RULE CV-26(d). It is well-established that "control of discovery is committed to the sound discretion of the trial court." *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009) (quoting *Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 382 (5th Cir. 1987)).

Rule 37 of the Federal Rules of Civil Procedure allows a discovering party, on notice to other parties and all affected persons, to "move for an order compelling disclosure or discovery." FED. R. CIV. P. 37(a)(1). The moving party bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence. *Export Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006). Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad, unduly burdensome or oppressive, and thus should not be permitted. *Id.*

The federal rules follow a proportionality standard for discovery. FED. R. CIV. P. 26(b)(1). Under this requirement, the burden falls on both parties and the Court to consider the proportionality of all discovery in resolving discovery disputes. FED. R. CIV. P. 26(b)(1), advisory committee note (2015). This rule relies on the fact that each party has a unique understanding of the proportionality to bear on the particular issue. *Id.* For example, a party requesting discovery may have little information about the burden or expense of responding. *Id.* "The party claiming undue burden or expense ordinarily has far better information—perhaps the only information—with respect to that part of the determination." *Id.*

## ANALYSIS

Paramedics Plus asks the Court to compel the Government to respond to Interrogatory Numbers 10–12, and 14[3] and further asks for the Court to compel the Government to produce documents regarding other profit caps. The Government argues that the information is not relevant to its cause of action. Further, the Government argues that Paramedics Plus's request for documents will require the Government to produce its investigation and litigation files. Finally, the Government argues that they already answered one of the disputed Interrogatories. The Court will address each of the Government's contentions in turn.

### I. Relevance of Information Surrounding Profit Caps

The Government maintains that the information Paramedics Plus is seeking is not relevant because (A) the substance of the information has no bearing on the issues before the Court and (B) the information sought is outside the relevant time period. The Court will discuss each of the Government's arguments regarding relevance.

#### A. Substance

Because the parties dispute the relevance as to a specific element of the Government's cause of action, for clarity, the Court will identify the elements. The FCA establishes liability for "any person who—(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claims; [or] (C) conspires to commit a violation of [the FCA]." 31 U.S.C. § 3729(a)(1)(A)–(C). "Generally, in considering liability under the FCA, the Fifth Circuit focuses on '(1) whether there was a false statement or fraudulent course of

---

[3] Paramedics Plus initially sought to compel an answer to Interrogatory Number 13 as well, but withdrew its motion as to Interrogatory Number 13 based on the Government's assertion that there is no profit cap agreement between Paramedics Plus and Three Rivers.

6

conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due (i.e., that involved a claim).'" *United States v. Vista Hospice Care, Inc.*, 2016 WL 3449833, at *16 (N.D. Tex. June 20, 2016) (citing *Gonzalez v. Fresenius Med. Care N. Am.*, 689 F.3d 470, 475 (5th Cir. 2012)).

The Government asserts that Paramedics Plus misunderstands the elements of the Government's case. The Government avers that materiality is an element of its FCA claim, but it is the certification of compliance with the AKS that must be material to the Government's payment decisions, not profit caps. As such, the Government argues that the information about profit caps is not relevant. Paramedics Plus maintains that, after *Escobar*, information related to the Government's continued payment of claims after discovery of a profit cap is relevant to the issue of materiality.

It is possible for the Government to prevail on a false certification theory if the Government demonstrates "that the defendant has improperly certified compliance with a statute or regulation (whether explicitly or impliedly), and that improper certification is material to the [G]overnment's payment decision." *Id.* (citing *United States ex rel. Bennett v. Boston Sci. Corp.*, 2011 WL 1231577, at *13 (S.D. Tex. Mar. 31, 2011)). Accordingly, the Court agrees with the Government that it is the certification of compliance with the AKS that needs to be material to the Government's payment decisions. *See Vista Hospice Care*, 2016 WL 3449833, at *16.

However, the Court must permit discovery of evidence that is reasonably calculated to lead to the discovery of admissible evidence, during the discovery process. *See* FED. R. CIV. P. 26(b)(1); *Crosby*, 647 F.3d at 262. In *Escobar*, the Supreme Court of the United States provided guidelines for determining materiality in this context:

> In sum, when evaluating materiality under the False Claims Act, the Government's decision to expressly identify a provision as a condition of payment is relevant, but

7

> not automatically dispositive. Likewise, proof of materiality can include, but is not necessarily limited to, evidence that the defendant knows that the Government consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement. Conversely, if the Government pays a particular claim in full despite knowledge that certain requirements were violated, that is very strong evidence that those requirement are not material. Or if the Government regularly pays a particular type of claim in full despite actual knowledge that certain requirements were violated, and has signaled no change in position, that is strong evidence that the requirements are not material.

*United Health Servs., Inc. v. United States ex rel. Escobar*, 136 S.Ct. 1989, 2003–04 (2016). Surprisingly absent from the Government's response[4] is any discussion of how the Supreme Court of the United States' holding applies to the information Paramedics Plus is attempting to discover. After a review of the analysis in *Escobar*, the Court finds that allowing discovery relating to the Government's continued payment after discovery of a profit cap is reasonably calculated to lead to the discovery of admissible evidence. Although the issue at hand is whether certification of compliance with the AKS is material, evidence of the Government's continued payment after discovery of a profit cap will likely lead to information about whether these specific entities certified compliance with the AKS.

Further, the Government argues that the information is not relevant because "there is no such thing as an immaterial violation of the AKS." (Dkt. #132 at p. 9). The Government maintains that not only was compliance with the AKS a condition of payment, but also "Congressional intent surrounding [the AKS], plain language of the [AKS], and years of case law demonstrate that the

---

[4] *Escobar* is briefly mentioned in the Government's response; however, the Government does not address the relevant portion of the holding. (Dkt. #132 at p. 11 ("Forty years of legislative history and decades of case law, both before and after *Escobar*, demonstrate that false certifications of compliance with the AKS . . . influence [the Government's] payment decisions.") ("Paramedics Plus's fallback position—that in light of *Escobar*, AKS compliance is not automatically material . . . is similarly misplaced because the [Government] is not arguing that the AKS is material simply because it is a condition of payment.")). Additionally, in its sur-reply, the Government mentions *Escobar* stating that "*Escobar* is not an AKS case and did not change the applicable AKS compliance analysis." (Dkt. #134 at p. 2). However, the Government also uses the First Circuit's opinion in *Escobar*, after it was remanded, even though it is not specifically an AKS case. At this point in time, the Court does not find a reason to limit discovery because *Escobar* presented the false certification of a different statue or regulation as a basis for liability under the FCA.

AKS is material to the [Government's] payment decisions as a matter of law." (Dkt. #132 at pp. 11–12). Paramedics Plus responds that this is a premature argument, as it involves the Government's theory of the case and the merits of the case, as opposed to a discovery dispute.

The Court agrees. The Court is not determining that this evidence proves or disproves the materiality element in this case. Paramedics Plus must later persuade the Court and/or the jury that the information it obtains during the discovery process is admissible and proves lack of materiality.[5] Likewise it is the responsibility of the Government to prove that congressional intent and case law prove materiality as a matter of law. However, this is an issue to be decided at a later point in time, as opposed to during a discovery dispute. At this stage, the Court's sole responsibility is to determine whether the discovery sought is relevant, which indeed it has done.

### B. Time Period

The Government additionally argues that the relevant time period is the time period during which the alleged profit cap scheme took place, 1997 through 2013.[6] Accordingly, the Government argues that the information is not relevant because "payment decisions in other places after the relevant time period is not relevant to the [G]overnment's earlier payment decisions." (Dkt. #132 at p. 10 (citing *United States ex rel. Escobar v. Universal Health Servs., Inc.* ("*Escobar II*"), 842 F.3d 103, 112 (1st Cir. 2016))).[7]

---

[5] For instance, the Government mentions that Alameda County and Pinellas County did not conceal their profit caps, which tends to work in the Government's favor (Dkt. #132 at p. 6). However, Paramedics Plus has no record or evidence of that and neither does the Court. If such assertion is true, it will be Paramedics Plus that will need to explain the relevance of the information it receives at a later stage in the proceeding, but the rules permit Paramedics Plus to discover the information.

[6] The Government argues about the relevant time period twice in its response. The Court will address both arguments at once.

[7] The Government further contends that Paramedics Plus has not responded to discovery after 2013 and that the parties should be subject to the same time frame for discovery. However, the discovery limitations and time period regarding Paramedics Plus's discovery is not before the Court at this time, and thus the Court does not consider this argument.

However, after the Court's review of the case, *Escobar II* does not stand for the proposition that post-suit payments are never relevant. In that case, the First Circuit held that is was unnecessary to "decide whether actual knowledge of the violations would in fact be sufficiently strong evidence that the violations were not material to the government's payment decision" for the purposes of ruling on a motion to dismiss *because* there was no allegation in the complaint that the government knew about the violation while it was paying the claim. *Id.* In fact, the complaint in that case only referenced reimbursements prior to the filing of the litigation and the government did not learn of the violations until after the filing of the litigation. *Id.* Accordingly, the complaint necessarily would not include any allegations of payment after the government learned of the violation. *Id.* As such, because the First Circuit took the allegations in the complaint as true and did not look to any evidence outside the pleadings, as required on a motion to dismiss, the court did not dismiss the case for lack of materiality. *Id.*

Here, the Court is deciding a discovery dispute as opposed to ruling on a motion to dismiss. Accordingly, the Court is to determine if the information sought is relevant. Paramedics Plus is seeking the exact information that would make it necessary for the Court to "decide whether actual knowledge of the violations would in fact be sufficiently strong evidence that the violations were not material to the [G]overnment's payment decision." *Id.* This is the exact type of information that is reasonably calculated to lead to the discovery of admissible evidence regarding the materiality element after *Escobar*.

Paramedics Plus argues that the issue of materiality goes beyond Paramedics Plus's alleged misconduct and, as such, the time frame should not be limited to 1997 through 2013. The Court agrees. Determining the Government's conduct after discovery of a profit cap is not necessarily limited to the time frame of Paramedics Plus's misconduct. Paramedics Plus met its burden to

10

establish that the Government's continued payment of Medicare and Medicaid claims after discovery of a profit cap is relevant and the Government did not meet its burden to establish that the time frame should be restricted to 1997 through 2013. As such, information after 2013 regarding the Government's discovery of a profit cap and continued payment after discovery is relevant.

## II. Documents

"Paramedics Plus seeks non-privileged documents and communication in the Government's possession related to other Profit Caps in the ambulance industry." (Dkt. #131 at p. 12). Paramedics Plus specifies that it is seeking documents obtained from communications with third parties related to profit caps, which should not be privileged as they are communications with a third party. Paramedics Plus continues that documents relating to when the Government learned about other profit caps and the Government's conduct after learning such information would be relevant to its defense that certification of compliance with the AKS is not material to the Government. Therefore, the documents should be produced as part of its discovery obligations in the case.

The Government contends that it is improper for Paramedics Plus to receive documents from its investigation and litigation files.[8] To support its argument that the Court should not permit discovery on investigation and litigation files, the Government vaguely alludes[9] to the fact that some information might be privileged; however, it makes no argument regarding privilege, has not

---

[8] The Government also makes bold assertions regarding the "true goals" of Paramedics Plus's discovery requests; however, the Court will not engage in a discussion regarding the Government's speculation behind Paramedics Plus's discovery request.

[9] The Government states that it "is not aware of any responsive, non-privileged information in its passion, custody or control relating to 'profit caps' in the ambulance industry that existed prior to Dean filing his *qui tam* in 2014." (Dkt. #132 at p. 4).

11

produced a privilege log, and has not asked the Court to review any documents *in camera*. Without such specificity, the Court cannot and will not rule on such an objection.

As further support for the contention that discovery into the Government's investigation and prosecution of other entities is improper, the Government cites *Renal Care Group*, a case from the Eastern District of Missouri.[10] *United States ex rel. Williams v. Renal Care Grp., Inc.*, 2008 WL 5233028, at *2 (E.D. Mo. Dec. 12, 2008). However, *Renal Care Group* is not binding precedent on the Court and the case was decided before the Supreme Court's decision in *Escobar*. "Materiality under the FCA has been a topic of increasing scrutiny since the Supreme Court's decision in *Escobar*." *United States ex rel. Harman v. Trinity Indus. Inc.*, 872 F.3d 645, 660–661 (5th Cir. 2017). The Government offers no explanation as to *Escobar*'s effect on the analysis in *Renal Care Group*. The plain language of *Escobar* does not seem to place a limitation on knowledge of this particular conduct: "if the Government regularly pays a particular type of claim in full despite actual knowledge that certain requirements were violated, and has signaled no change in position, that is strong evidence that the requirements are not material." *Escobar*, 136 S.Ct. at 2004. As such, the Government's reliance on *Renal Care Group* is unpersuasive.

The Court is not holding that the Government's conduct regarding other entities will prove or disprove materiality, but the Court finds that, pursuant to *Escobar*, the information is relevant for discovery purposes. However, the Court notes that Paramedics Plus's document request for any communications regarding profit caps is broad. Paramedics Plus has established that information pertaining to the Government's continued payment of claims after discovery of a profit cap is relevant but has not sufficiently established that all communications related to profit caps

---

[10] *Renal Care Group* states that "the focus is on the government's knowledge of these defendants' conduct and the allegedly false claims at issue in the particular case, rather than of practices industry-wide or the practice of other entities not involved in this case." 2008 WL 5233028, at *2.

are relevant. Accordingly, the Court limits Paramedics Plus's request to documents pertaining to the Government's continued payment of claims after discovery of a profit cap.

If this production requires the Government to produce any documents from its investigation or litigation files, and the Government is concerned about this information being disseminated, the Court reminds the Government that the evidence can be produced subject to the Court's protective order: "Except as otherwise indicated below, all documents or discovery responses designated by the producing party as "Confidential" or "Attorneys Eyes Only" and which are disclosed to produce to the attorneys for the parties to this litigation are Protected Information and are entitled to confidential treatment as described below." (Dkt. #11 at p. 2).

**III.     Interrogatories**

The Government maintains that it answered Interrogatory Number 14.[11] The Government asserts that, in response to Interrogatory Number 14, it attempted to explain that the Government would not deny payment simply based on a profit cap, and offered examples of times that it settled, or in effect denied payment, with entities that submitted claims tainted by a violation of the AKS. Paramedics Plus responds that pointing to settlement agreements does not answer the question of whether the Government denied payment based on a profit cap agreement. The Court agrees that this does not directly answer the question; however, the Court notes, as it did before, that denial of a claim based on a profit cap is not the test for materiality here, but it could possibly lead to relevant information. It will later be Paramedics Plus's burden later to show that any information it receives from this interrogatory proves that the Government cannot establish materiality of the false certification of compliance with the AKS.

---

[11] The Court notes that the Government stated it already answered two disputed interrogatories: "Interrogatories No. 12 and 14;" however, it proceeded to explain its answers to Interrogatories Number 13 and 14. Without any argument or explanation, and the Court's review of the responses, the Government did not answer Interrogatory Number 12.

## CONCLUSION

It is therefore **ORDERED** that Paramedics Plus, LLC's Motion to Compel the United States of America to Comply with Discovery (Dkt. #131) is hereby **GRANTED IN PART**. Accordingly, the Government is compelled to answer Interrogatory Numbers 10–12, and 14 and produce documents in its possession, custody, or control related to the Government's discovery of a profit cap and continued payment after the fact within fourteen days of the date of this Order.

**SIGNED this 30th day of January, 2018.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE